| Jan'y Term, | Tompkins vs. W. T. and O. Vintroux. | 1869. |
|---|---|---|

## Wheeling.

### BEVERLY TOMPKINS vs. W. T. AND O. VINTROUX.

#### January Term, 1869.

1. A call in a deed of partition is "thence to the back line of the survey such course as will throw 500 acres of said 1,000 acre tract below said division line." The "back line" is 508 poles long and a straight line from the point given to the extreme or upper end of the "back line" will not include the amount of 500 acres on the lower side of the division line. HELD:

   1. That as natural objects and fixed lines control magnetic calls and distances it would seem that the call for the "back line" should control the quantity.

   2. That in a court of law the party is bound by the terms of his deed, and the line from the given point to the "back line" must be a straight one, and in an action of trespass the plaintiff, who claims on the lower side of division line, cannot recover if the alleged trespass was committed on the upper side of a straight line from the given point to the extreme or upper end of the "back line."

   3. That if the quantity called for be not embraced by the straight line, the party can only obtain relief in a court of equity on a proper case made.

2. The action of trespass *quare clausum fregit* cannot be revived in the name of the personal representative of a deceased plaintiff.

3. Where the action survived to a joint plaintiff and the case was revived in the name of a sole devisee of the deceased party by consent, no objection can be made thereafter by either of the parties consenting.

John Lewis and Samuel Lewis were the joint owners of a tract of 1,000 acres of land in Kanawha county. By deed dated April 11th, 1849, they made partition of it according to the following boundaries:

"Beginning on the Kanawha river three poles above the mouth of Big Scary creek; thence across the bottom to the base of the hill three poles above the creek, so as to make

the line from the river to the hill extend three poles above the creek; thence from the base of the hill to the back line of the survey, such course as will throw five hundred acres of said tract of 1,000 acres below said division line; and the said John is to have all lying above said line, and the said Samuel all lying below it."

Samuel conveyed his portion to Lewis E. and William T. Vintroux by deed dated February 7th, 1853. John conveyed his portion to William Tompkins by deed dated September 24th, 1852.

The vendees of Samuel brought suit in April, 1861, against Beverly Tompkins, the heir of William Tompkins, for an alleged trespass. The controversy arose about the location of the line in the above description which was to run from the "base of the hill" to the "back line of the survey." For convenience of description the line "beginning on the Kanawha" and running to the "base of the hill" may be called the line A B, and the line to the back line of the survey, B C.

On the trial, which was had in June, 1866, it was proven that the trespass charged was in cutting timber, &c., on a portion of the land which, if the line B C was a straight one, would be on the land claimed by the defendant; also by the surveyor Thomas, that the back line was 508 poles long, and if the line B C was a straight one from B to even the upper or extreme end of the back line that there would not be 500 acres in the portion claimed by the plaintiffs.

The defendant asked the court to instruct the jury as follows:

"1. That the plaintiffs in this case, to entitle them to recover, must locate the partition line described in the partition deed between John and Samuel Lewis according to the calls of that deed, and show by evidence that such location would embrace the land on which it is alleged the trespasses were committed.

2. That the location of the partition line aforesaid cannot be made by the calls of the deed of Samuel Lewis to the Vintrouxs in the absence of the patent for the 1,000 acres,

150     COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,     Tompkins vs. W. T. and O. Vintroux.     1869.

and the deeds under which Jno. and S. Lewis claimed and held the land.

3. That all evidence offered by the plaintiffs to identify the partition line by the survey of Thomas, according to the deed of said Samuel Lewis, is improper, and ought not to be regarded by the jury as evidence to identify said partition line.

4. That the call of the partition deed to run from the river to the base of the hill three poles from Scarey, thence to the back line such course as will throw 500 acres below that line, should be understood as a straight line to the back line, which might be varied in course, but must go to some point on the back line which the quantity called for cannot control. If it cannot be run to the back line, and throw five hundred acres below, then the plaintiffs must correct the error by other proceedings than this suit."

The court gave No. 1 and refused the others; to which the defendant excepted.

While the suit was pending L. E. Vintroux died and the suit was revived in the name of his executrix, and at the same term of the court at which the trial was had his death was suggested, and by consent the suit was revived in the name of Olivia Vintroux, his sole devisee.

The jury found for the plaintiff and gave him 35 dollars damages. The defendant moved the court to set aside the verdict and grant a new trial on the ground that the verdict was contrary to law and evidence, but the court refused and defendant again excepted.

The defendant brought the case here on a writ of error and supersedeas.

B. H. *Smith* for the plaintiff in error.
G. H. *Lee* for the defendants in error.

BROWN, President. The point requiring the determination of the court in this case is the proper construction to be put upon the partition deed of John and Samuel Lewis, in which they claiming to be the joint owners of a thousand

acre tract of land on the south side of Kanawha river, including the mouth of Scary creek divide the same as follows: "Beginning on the Kanawha river three poles above the mouth of Scary creek; thence across the bottom to the base of the hill three poles above the creek, so as to make the line from the river to the hill extend three poles above the creek; thence from the base of the hill to the back line of the survey, such course as will throw five hundred acres of said tract of 1,000 acres below said division line; and the said John is to have all lying above said line, and the said Samuel all lying below it."

It will be observed that the point on the Kanawha river three poles above the mouth of Scary creek is definite and certain. So also is the line thence across the bottom to the base of the hill three poles above the creek. At the end of this line at the base of the hill begins the line of controversy, and for brevity I will call this point the pivot point, and the succeeding line, which is the line of controversy, the random line. From the pivot point to the back line of the survey the random line is to be run. Such is the descriptive call of the deed, but with these further provisions, that the said random line is to extend from the pivot point to the back line of the survey, " such course as will throw five hundred acres of said tract of 1,000 acres below said division line."

The report of the surveyor and evidence show that the back line of the survey was 508 poles long. So that the first part of the call of the random line from the pivot point to the back line of the survey is fully satisfied if it strike the back line at any point between its two extremities. This random line, therefore, may vary at one end, a distance of 508 poles, and still meet the express call for the back line as well at one end or the other or in the middle of it. And as the random line is to include in the part of the survey below that line the quantity of 500 acres, much latitude is allowed to vary the line on the pivot point to the whole extent of the back line of 508 poles in length, in order to include, if necessary, the 500 acres on the lower side of it.

If the random line had been extended from the pivot point to the lower back corner of the survey, and it had then been found to include more than 500 acres on the lower side, could John Lewis, who was to have the upper part or excess over 500 acres have been heard to claim the right to depart from the call for the back line and vary the random line further down till striking the lower end of the line of the survey the quantity of 500 acres only should be contained on the lower side? Certainly not. So also varying the random line on the pivot point from the lower or any intermediate point to the upper corner on the back line, it is found upon experiment that there is not the required quantity of 500 acres below the division line, but notwithstanding that fact, it would be equally improper in this case, as in the former, to depart from the call for the back line for the sake of quantity. The two calls, viz: for the back line and for the quantity of 500 acres being found inconsistent and impossible to satisfy both in a court of law, one or the other must control; and as natural objects and fixed lines control magnetic calls and distances it would seem that the call *for the back line* should control the call for quantity; and, indeed, the learned counsel, who argued the cause for the defendants in error, in effect, conceded this point; as he admitted the random line could not be varied or extended higher up for quantity than the upper back corner, and argued, therefore, that inasmuch as a straight line from the pivot point to the upper back corner would not include the quantity of 500 acres, it was competent to make two lines and an angle between those points, so as to include the required quantity as had been done in the case. This view of the case raised another point for determination, and that is whether the call for the course or line from the pivot point to the back line is to be regarded a straight line, or whether it may be varied in direction and number as the party making the survey may choose till the required quantity is obtained. This latter construction would admit of almost endless variety in the location. And as each party to the partition line would have equal right of choice in the varia-

tion, it could only result in conflict and confusion, as in this case.

I think there can be no satisfactory reason given for departing from the straight line between the two points ascertained; and if the quantity called for be found not to be embraced by the straight line the party can only obtain relief in a court of equity, on a proper case made, but in a court of law must be confined within the bounds of his partition deed, as above construed. As it appears from the evidence that the trespass alleged was done on the land in question above the random line if run straight, though below it if run crooked, to include the quantity, in which former case the defendant in error had no legal right to or possession of the land above the straight line, it is clear that the judgment should be reversed with costs to the plaintiff in error, the verdict set aside, and the cause remanded to the circuit court of Kanawha with instructions to grant the plaintiff in error a new trial upon the payment of the costs occasioned thereby.

The objection that this case, which is trespass *quare clausam fregit*, could not be revived in the name of the personal representative of one of the joint plaintiffs, who died pending the action and before verdict, I think is well taken, because the action survived to the other joint plaintiff, and whether it so survived or not, in neither case could it have been revived in the name of the personal representative of the deceased plaintiff. But, inasmuch as it was revived by consent in the name of the sole devisee of the decedent, it would seem highly expedient and proper that that which had been done by consent should stand, and not be permitted afterwards to be made the ground of objection by either of the parties consenting.

The remaining judges concurred,

JUDGMENT REVERSED.