# CHARLESTON.

WINDING GULF COLLIERY CO. v. CAMPBELL *et al.*

Submitted January 23, 1912. Decided May 6, 1913.

1. PARTITION—*Partition Deed—Predicate.*
   As the basis for the introduction of a deed made in execution of a decree of partition as evidence of title, it suffices to show, by the orders made and entered in the cause, that the court rendering the decree and authorizing the deed had before it the subject matter of the suit and the parties. (p. 455).

2. JUDGMENT—*Recitals—Presumptions of Regularity.*
   Recitals by the orders, judgments and decrees of courts of general jurisdiction that they have jurisdiction of the parties and the subject matter are sustained by presumptions in favor of the regularity of their proceedings. (p. 456).

3. PARTITION—*Commissioner's Deed—Sufficiency.*
   A deed of parties to a partition suit, made for and on their

behalf by a commissioner appointed for the purpose, need not show formally the signatures of the grantors by the commissioner, if the deed recites they acted in making the deed by the commissioner under the decree authorizing him to execute the same, and that, acting as aforesaid, they had set their hands and seals to the instrument. (p. 456).

4. PRINCIPAL AND AGENT—*Execution of Deed—Power of Attorney —Signatures.*

An agent executing a deed under a power of attorney, and affixing his own signature as agent and attorney in fact for his principals, together with their seals, need not affix the signatures of his principals. (p. 457).

5. SAME—*Execution of Deed—Power of Attorney—Recitals.*

Such agent being a co-heir with his principals, may execute the deed for and on behalf of himself and his principals without designating his principals by name. A recital in the deed that he conveys for and on behalf of himself and the "other heirs" as their agent and attorney in fact suffices. (p. 458).

6. DEEDS—*Description—Sufficiency.*

A deed reciting the subject matter of a conveyance as two lots assigned out of a larger survey in a designated suit for partition thereof, subject to numerous undefined prior conveyances of the same, giving the numbers of the lots, is not void for uncertainty. (p. 459).

7. EJECTMENT—*Evidence—Deed.*

Such a deed is admissible in evidence in an action of ejectment, without prior proof of the location of the exceptions and reservations. (p. 459).

8. WILLS—*Admission to Record—Proof—Subscribing Witness.*

A will may be admitted to record upon proof of the due execution thereof by one of the attesting witnesses and proof of the signature and hand writing of the other, the latter being absent from the state. (p. 460).

9. SAME—*Proof—Deposition of Subscribing Witness.*

The statute authorizing the taking and use of a deposition of an absent witness in such case, is permissive, cumulative, and not exclusive. (p. 460).

10. PARTITION—*Commissioner's Deed—Validity—Jurisdiction.*

A deed by a special commissioner for land sold under a decree in a cause instituted by a part owner of the land, seeking a sale thereof instead of partition as against infants, having interests therein, is not void for want of jurisdiction, because the bill prays a sale of the land, after alleging insusceptibility of division thereof in kind. (p. 460).

11.  EVIDENCE—*Expert  Opinion—Admissibility—Boundaries—Eject-
     ment.*

     The opinion of a surveyor, who has had extensive experi-
     ence with the lines, corners and boundaries of an ancient
     patent, as to the identity of one of its corners, which he has
     examined and tested, is admissible in evidence.  (p. 461).

12.  BOUNDARIES—*Establishment—Evidence—Instructions.*

     A line of a survey described in a patent as commencing at
     one natural object, such as a tree, and running without further
     locative calls to another object, such as a tree, is governed in
     its location by the monuments called for, if they can be found,
     although an uncalled for marked line different therefrom is
     disclosed by extraneous evidence; and, if there is sufficient evi-
     dence of the identity of the monuments called for as the
     termini of the line, the trial court may properly submit to the
     jury the location of the line by the monuments called for or
     by the marked line, according to their judgment as to the
     weight of the evidence tending to prove the respective locations
     claimed.  (p. 463).

13.  SAME—*Descriptions—Construction.*

     A line designated in a deed or other given muniment of
     title by its course and distance only must yield to an incon-
     sistent marked line, run as the line intended by the parties,
     but if the deed calls for a line by monuments as well as by
     course and distance, such marked line not referred to in the
     deed must be ignored, if the monuments called for are ascer-
     tainable.  (p. 469).

14.  DEEDS—*Construction—Inconsistent Description.*

     If a deed contain a general description of property, con-
     forming to the manifest intention of the parties, as shown by
     the situation and circumstances surrounding them and the
     purpose they had in view, and also another description, clearly
     inconsistent with such circumstances and purpose, such latter
     description must be rejected as false and as having been in-
     serted in the deed by accident or mistake.  (p. 469).

15.  SAME—*Construction—Description—Presumption.*

     The grantor in a deed, apparently intended for conveyance
     of all of his land or all of a tract, is presumed not to have
     intended to retain a narrow strip thereof, and upon this pre-
     sumption, calls in a deed may be disregarded as being erro-
     neous, if the deed, viewed in the light of extraneous evidence,
     is ambiguous in its terms.  (p. 472).

16.  EJECTMENT—*Instruction—Evidence.*

     If, in an action of ejectment, the title papers of the defend-
     ant, under findings of fact justified by the evidence, trace

back to the same title under which the plaintiff claims, the court may properly direct an inquiry in its instructions as to whether the claims of title originated in a common source. (p. 473).

17.    SAME—*Proof of Title—Estoppel.*

A well recognized and established exception to the rule requiring the plaintiff in ejectment to trace his title from the state, is the estoppel in law arising out of a common source of title. In such case, the plaintiff need not trace his title to the state. (p. 474).

18.    SAME—*Location of Exceptions and Reservations—Burden of Proof—Prima Facie Case.*

A claimant of land, under a deed falling under the rule of inclusive surveys as to the burden of proof, may establish a prima facie case of location of the exceptions and reservations outside of the land in controversy, by proving in a general way that none of the exceptions are within the bounds of the land in controversy, and, in the absence of evidence in rebuttal, he need not show the locations of the exceptions by evidence of the location of the lines thereof. (p. 474).

Error to Circuit Court, Raleigh County.

Action by the Winding Gulf Colliery Company against J. A. Campbell and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*A. P. Farley* and *John M. Anderson,* for plaintiffs in error.

*McCreery & Patterson, McGinnis & Hatcher,* and *Brown, Jackson & Knight,* for defendant in error.

POFFENBARGER, PRESIDENT:

The tract of land recovered in this action of ejectment contains about 150 acres, part of a larger tract of 765 acres, demanded in the declaration and treated and sought to be recovered by the plaintiff, the Winding Gulf Colliery Company, as part of a tract of 19,751 acres, known as lot No. 4 in the partition of the Moore and Beckley survey of 170,038 acres, patented on June 20, 1795. Disclaimers reduced the area described in the declaration to about 150 acres. The principal issue of fact in the case was whether the land in controversy is within the boundaries of the Moore and Beckley patent and that re-

solved itself into questions as to the location of the southwest corner of the Moore and Beckley survey and the character of the western line of that survey, whether angular or straight. On this, as well as other issues, the jury found for the plaintiff.

An assignment of error charging lack of an issue has been abandoned.

Endeavoring to make out a complete chain of title from the state, the plaintiff offered a great deal of documentary evidence, nearly all of which was objected to by the defendants but admitted by the court. These documents include a deed from Alfred Beckley and others to Samuel McD. Moore, the record of a suit in chancery by Stuart's executors against Moore and others, a power of attorney from Andrew Moore to S. McD. Moore, a deed from S. McD. Moore to Morris Harvey and W. T. Mann, a copy of the will of W. T. Mann, a copy of a deed from James and Matthew Mann, executors, and others to Riffe and others, the record of a suit by *B. D. Cole* v. *J. N. Cole* and others.

As the defendants, Campbell and Curtis, claim under a deed from S. W. Farley who derived all the title he had from a conveyance made to him by B. D. Cole, the purchaser, at a judicial sale in a partition suit, of land conveyed to Adaline Cole to whom it had been conveyed by Riffe, Ford and McCreery, as a part of the Moore and Beckley land, the plaintiff insists that the parties hereto claim title from a common source, in consequence whereof the latter cannot be heard to object to the admissibility of the title papers, or, at least, that it was not incumbent upon the plaintiff to trace its title beyond the deed to Riffe, Ford and McCreery; and that the admission of the documentary evidence objected to was harmless error, if error at all. Farley had but the surface and timber of 30 acres of land under his deed from Cole, according to the specification of quantity therein, but it had conveyed probably three times as much by its metes and bounds, which, however, did not go beyond the bounds of the Moore and Beckley patent as claimed by the plaintiff. Having this, he executed a deed, May 31, 1899, purporting to convey to J. A. Campbell a tract of about 150 acres, including part of his 30 acres, but reserving and excepting from the conveyance part or all of the surface and timber he actually owned. This deed went far beyond the metes and bounds of the deed from Cole to Farley, but not beyond the limits of the

Moore and Beckley patent as claimed by the plaintiff, nor of Lot No. 4 thereof as so claimed. Campbell conveyed to Curtis an interest in his purchase from Farley.

The land conveyed by Farley to Campbell is a strip about 1000 poles long, 70 poles wide at one end and 32 poles wide at the other. Within its boundaries lies the triangle sued for by the plaintiff, 40 or 50 poles wide at the southern end and running to a point at the northeast corner of the Farley survey. It lies almost entirely east of the straight western line of the Moore and Beckley survey as its location is claimed by the plaintiff and therefore within that boundary, but west of the line as claimed by the defendants and outside of the boundary, Within this triangle Farley built a small house after his conveyance to Campbell, which the defendants claim is on the land conveyed to them and outside of the 30 acres reserved by Farley. But the plaintiff claims this house is on the 30 acres, and that possession and occupancy thereof by Farley does not constitute possession under the deed made by him to Campbell, nor on behalf of the defendants Campbell and Curtis.

The Farley deed to Campbell does not describe the land embraced in it as being part of the Moore and Beckley survey nor purport to convey it as such. Nor does the deed from Cole to Farley. Whether any of it is within the Moore and Beckley survey is a vital issue in the case. Another is whether only a portion thereof lies within it. The western line of each of these conveyances coincides with the western line of the Moore and Beckley survey and the Cole deed describes its beginning corner as the "Northwest corner of Lot No. 4 of Moore and Beckley line", and proceeds, "near the Maxwell place and with Britton and Gray's patent line, South 15 1-4 West", while the Farley deed starts with the same beginning corner as being on the Britton and Gray patent line and runs with the same, but does not say the corner is a corner of said lot No. 4. It calls for the Moore and Beckley patent line as being on the opposite side of the tract it conveys. The deed to Adaline Cole from Riffe, Ford and McCreery, about ten years prior in date to that of Cole to Farley, calls for the northwest corner of Lot No. 4 of the Moore and Beckley tract, as the beginning corner, describes the closing line as coinciding with what is known as the Bray

line, leading to a point east of that corner, as located by the plaintiff, about 32 poles, a place known as the eight-notch chest-nut corner.

The patent to Moore and Beckley is unquestioned. Their ti-tle, however, about 15 years after the acquisition thereof be-came the subject matter of a partition suit, brought by one Charles Stuart in the county court of Greenbrier County. Claiming an equitable interest therein, Stuart, in the year 1810, brought this suit. He alleged, as the basis of his claim, the fol-lowing matter: One Ward, his debtor, had assigned to him Virginia land warrants for large areas of land, after he had arranged with Moore, a member of Congress, to dispose of the lands, when surveyed and patented, to eastern purchasers, in consideration of a share in the proceeds. Moore associated with him Beckley, the clerk of the House of Representatives. The patents having been issued to them, to enable them to make the sale, they endeavored to sell to Robert Morris and one Nicholson, but for some reason, failed. Stuart sued for partition. Though begun in the county court of Greenbrier County, the suit ended in the Superior Court of Chancery of Augusta County. The process in the county court of Greenbrier County and the bill filed in that court and the decrees entered in the circuit court of Augusta County, showing an adjudication of the right to partition and the execution of the decree of partition, includ-ing the report of the commissioners, disclosing a division of the survey into twelve lots for the purpose, and a decree confirm-ing the partition and assignment of the lots, were introduced. The final decree empowered and ordered the marshal of the court to execute proper deeds of partition to the parties. The objection to the admission of these portions of the record is based upon the absence of any order showing how the cause was transferred from the Greenbrier County Court to the Augusta County Court of Chancery. The recitals of the decrees as well as their findings and determinations show the subject matter, the land, and the interested parties were before the court. It was a court of general jurisdiction. To sustain the deeds of convyance made under the decrees, it was unnecessary to in-troduce the entire record. It sufficed to show the parties hold-ing the title to the land and the land itself were before the court, the land divided, the partition confirmed and authority given

to execute the conveyances. *Wilson* v. *Braden,* 48 W. Va. 200; *Waggoner* v. *Wolfe,* 28 W. Va. 820; *Ronk* v. *Higginbotham,* 54 W. Va. 137. These requisites, as defined by the decisions of this Court, omit the process. Similarly it would be unnecessary, when the suit appears to have been commenced in some other court, to show how it was transferred. The superior court of chancery, being one of general jurisdiction, its recitals of jurisdiction of the parties and subject matter are sustained by a presumption in favor of the regularity of its proceedings. *St. Lawrence Co.* v. *Holt et al.,* 51 W. Va. 352, 366; *Hall* v. *Hall,* 12 W. Va. 1; *Smith* v. *Henning,* 10 W. Va. 596.

The marshal of the court having failed to execute the deeds, as directed by the decree above referred to, the court, by another decree entered June 23, 1835, reciting his failure and the abolition of the office of marshal, substituted Samuel Clark, Esq., for him as a commissioner to execute them. As such commissioner, he executed a deed on behalf of Alfred Beckley, Charles Stuart and Lewis Stuart to the heirs of Moore who was then dead, reciting the decree of partition and direction to the marshal to execute the conveyances and his own appointment as a commissioner to make the deeds in the place of the marshal, and then proceeding as follows: "Now Therefore this Indenture Witnesseth that the said Alfred Beckley, Charles A. Stuart & Louis Stuart by the said Samuel Clark acting under the decree & order aforesaid for and in consideration of the sum of one dollar to them in hand paid by the said representative of the said Andrew Moore dec'd, the receipt whereof is hereby acknowledged have Granted bargained and sold and by these presents by the said Samuel Clark acting in pursuance of the authority aforesaid do grant bargain and sell unto the said Samuel McD. Moore Andrew Moore Mary Moore Magdlane Moore, William Moore & Sarah Moore their heirs and assigns the following tracts or parcels of land", describing them, one of which was Lot No. 4 of the Moore and Beckley survey, assigned in the partition to the heirs of Moore. The attestation clause says: "In Testimony Whereof the said Alfred Beckley Charles A. Stuart and Lewis Stuart by said Samuel Clark acting under the authority aforesaid have hereunto set their hands and seals the day and year first above written." The deed does not bear the signature of Clark as Commissioner or

otherwise. The only signatures are those of Alfred Beckley, Charles A. Stuart and Lewis Stuart. If the commissioner had signed his own name under the name of each grantor with the addition of commissioner and placed the preposition "by" between the name immediately preceding and his signature, he would thereby have formally delineated on the paper the character of the act done by him and the capacity in which he acted. He would have thus shown in form what the deed says he did in fact, for it repeatedly declares the parties executed the deed through him, or which is the same thing, that he executed the deed in their names and for and on their behalf, and the attestation clause says they, by him acting under the authority conferred upon him, set their hands and seals to the deed. The omission of his own name is clearly immaterial. In principle, the deed is the same as one executed by an agent under a power of attorney and its form has been approved in cases of that kind. *Shanks* v. *Lancaster*, 5 Grat. 110.

The heirs of Andrew Moore seem to have been seven in number, Samuel McD. Moore, Sarah Moore, widow of Andrew Moore, deceased, D. E. Moore, Mary Moore, Magdaline Moore, William Moore and Sally E. Moore. The last six of these executed to Samuel McD. Moore a power of attorney, dated April 30, 1836, authorizing him to sell and convey all of their right, title and interest in lands which belonged to their ancestor, Andrew Moore, in the counties of Fayette, Logan, Nicholas, Jackson, and any other Trans-Allegheny counties in the state of Virginia, and all his lands in the states of Ohio and Kentucky. Andrew Moore executed to him a power of attorney, dated August 12, 1859, reciting the execution of a former one on the 4th day of May, 1833, and the existence of a doubt as to whether the latter conferred sufficient power upon the agent to execute sales and conveyances previously made by him and the intention and desire to remove all such doubt, ratify and confirm all such sales and conveyances, and vest full power and authority in the said S. McD. Moore to convey all the parcels of land theretofore sold by him and also all the right, title and interest of the said Andrew Moore in and to the residue of the land estates of his ancestor, Andrew Moore, deceased, and appointing and constituting him his true and lawful attorney for the purpose. The objection to the introduction thereof is that it is a copy

of a copy. We do not understand it to be so. The former one and its supposed defect are referred to and recited only to show the reason for the execution of the subsequent one, conferring greater powers and more authority, to the end that the agent might execute his commission more expeditiously and successfully. It bears two certificates of recordation, one in Nicholas County and another in Raleigh County, but this circumstance affords no basis for the inference relied upon.

The deed executed by S. McD. Moore for and on behalf of himself, and as agent and attorney in fact of the other heirs of Andrew Moore, to Morris Harvey and Wm. T. Mann was objected to upon five grounds, failure to name the other heirs of Moore, failure to sign their names to the deed, omission of their names from the certificate of acknowledgment, uncertainty in the description of the land and failure to locate certain reservations in the deed or exceptions therefrom. The first three objections are of the same character as that made to the introduction of the deed from Alfred Beckley and Charles and Lewis Stuart by Clark as commissioner. It recites that, in the execution thereof, S. McD. Moore acted for himself and as agent and attorney in fact for the other heirs of Andrew Moore. Moore affixed his own signature and then affixed his signature as agent and attorney in fact for the heirs of Andrew Moore. He acknowledged it in his individual capacity and as agent and attorney in fact for the heirs of Andrew Moore. Under the authority of *Stinchcomb* v. *Marsh,* 15 Grat. 202, 209, this was sufficient. In that case Judge Lee said: "To bind the principal every deed should be executed for and in the name of his principal, though it was not material whether the attorney sign the name of his principal with a seal annexed, stating it to be done by him as attorney for the principal, or whether he sign his own name with a seal annexed, stating it to be done for the principal." The phrase "other heirs of Andrew Moore" was broad enough to include all of the heirs except himself, and as they could be ascertained, the deed was in this respect, certain. The recorded powers of attorney made a matter of record the power of disposition of the interests in the land of the persons who had executed them. Having power to dispose of these interests and his own as an heir, he executed this deed, declaring it to have been done for and on behalf of himself and the other heirs.

The following legal proposition asserted in *Walker* v. *Moore,* 95 Va. 729, is entirely sound and accurately applies in the construction of this deed: "Where a person who has a power of disposition over property and also owns an interest in it, executes an instrument by which he disposes of the property without expressly referring to the power, the instrument will be deemed to have been intended as a disposition of his interest, and not as an exercise of the power, if the transfer of his interest will satisfy the terms of the instrument; but if he has no interest in the property, or though he has an interest in it, yet if the instrument conveys a larger interest than he owns, then, inasmuch as the instrument would not take effect at all in the one case unless referred to the power, and would not be satisfied in the other by the transfer of his mere interest, it will be construed to be an execution of the power for the reason that it is necessary to satisfy the terms of the instrument, and the apparent intention of the parties. It is only where the words of the instrument may be satisfied without an intention to execute the power that it is not to be deemed an execution thereof. The subsequent acts and conduct of the donee of the power may also be looked to, for the purpose of showing that the donee regarded the instrument as an execution of the power conferred."

The objection of uncertainty is untenable. The deed, read ·in connection with the partition proceedings, decrees and conveyances, to which it may be said to refer in a general way, since it says the two tracts conveyed are parts of a tract of 170,000 acres divided among the heirs of Moore, Beckley and Stuart, is readily and definitely applicable to the two lots assigned and conveyed to the Moore heirs.

The deed was obviously not inadmissible because it made reservations and exceptions from the two lots it conveyed subject thereto. It was nevertheless a deed conveying land within the boundaries of the two lots. As in the case of any other deed, it had to be supplemented with oral testimony for purposes of identification of its subject matter and application thereto. The location of the reservations and exceptions was matter of proof by oral testimony. *Stockton* v. *Morris,* 39 W. Va. 432. *Pennington* v. *Underwood,* 59 W. Va. 340, and *Mills* v. *Edgell,* 69 W. Va. 421, do no more than place the burden of proof as to loca-

tion upon the claimant under the deed. They do not vary the rule as to the admissibility of the deed itself.

Though subscribed by two witnesses, the will of Wm. T. Mann was proved for admission to record by only one, the other having left the state and his residence being unknown. The hand writing and signature of the absent witness were proved by two witnesses, the other subscribing witness and another person. The sufficiency of this proof has been judicially declared. "A will must be subscribed but need not be proven by two attesting witnesses." *Webb* v. *Dye,* 18 W. Va. 376; *Coffman* v. *Hedrick,* 32 W. Va. 119, 128; *Davis* v. *Davis,* 43 W. Va. 300. Section 27 of chapter 77 of the Code, allowing the deposition of a witness to a will residing out of the state to be taken, has been impliedly construed by these decisions as not prescribing an exclusive mode of proof in such case. Read in the light of these decisions, it is permissive, allowing proof by means of a deposition, when it is, for any reason, necessary or desirable to prove it in that way.

Harvey and Mann's executors conveyed the 765 acre tract to Riffe, Ford and McCreery, who conveyed the surface and timber thereof to Adaline Cole. After her death, her husband, Bartley D. Cole, claiming to have become the owner by purchase of several of the interests of her 17 children, instituted a suit in chancery in which such proceedings were had that said surface and timber were sold under a decree and purchased by said Cole. According to the admissions of the bill, nine of said children were then infants. It charged insusceptibility of division of the land in kind, on account of its character, and inability of the infant defendants to pay the taxes on their shares, if it could be divided. For these reasons, the bill prayed a sale thereof. A guardian *ad litem* was appointed for the infant defendants who filed his answer and a decree of sale was pronounced. Cole's purchase thereunder for the sum of $1,000.00 was confirmed, and the purchase money, when fully paid, was apportioned between him, as owner of the interests of the adult heirs, and the infants, the share of the latter being ordered paid to him as their guardian. This having been done, a deed was directed to be executed, conveying the land to him. Lack of jurisdiction of the court to decree a sale of the land upon the bill filed by Cole, is charged as the basis of the objection to the introduction of the

record.    The argument to sustain this contention treats the bill as one filed by him in his individual capacity for the sale of the interests of the infants, under the statute permitting sales of such interests in proceedings instituted by their guardians. Assuming such to have been the purpose or effect of the bill, counsel for the defendant say it could not be converted into a bill for partition.    This argument proceeds upon an unsound premise.    Cole filed the bill in his own right as part owner of the land.    He had a right of partition and the court jurisdiction and power, under its general equity procedure, to grant him relief, by way of partition.    His bill may have been defective, since it is usual and regular to pray for partition primarily and sale of the land alternately, in case it is found insusceptible of partition.    The case is entirely different in nature from that of *Hoback* v. *Miller,* 44 W. Va. 635, in which the decree was held void for want of jurisdiction.    There the widow, plaintiff in the suit, had no cause of action at all.    Here the plaintiff did have a cause of action and set it up in his bill.    He may have done this unskilfully and defectively, but his bill contains enough to call for the judgment and opinion of the court as to its sufficiency and brings before the court the parties and subject matter of a cause of action within its jurisdiction.    The decree may have been voidable at the instance of the infants because of errors in the proceedings, but it was not void for want of jurisdiction.    *Stewart* v. *Tennant,* 52 W. Va. 559.

Exception was taken to the action of the court in permitting a witness, G. F. Wilson, a surveyor, to state to the jury his opinion as to the identity of a certain corner, claimed by the plaintiff to be the true corner.    This witness had done much surveying in which it was necessary to ascertain and locate lines of the Moore and Beckley patent, and in which those lines, or some of them, were involved.    He was entirely familiar with the character of the marks on the lines and knew their peculiarities. The corner in question was the southwest corner of the survey, described in the patent as being at a white oak and chestnut oak, also a number of other blazed trees, standing on a high ridge on the headwaters of Guyandott.    For a long time nothing could be found upon the ground which seemed to answer or correspond with this call, and the witness, after a considerable search, found trees, on a high ridge, but not on the top thereof, which, in his

opinion, are those called for in the patent. One of them, the chestnut oak, was standing and the annulations counted well up to the age of the survey. Near it was a depression indicating the site of a tree that had disappeared. Around it were other trees apparently marked as pointers. The question propounded to him was as follows: "As a surveyor, state whether or not that is, in your opinion, the true corner—the southwest corner—of the Moore and Beckley survey?" His answer was: "Yes, sir, I do." This opinion related to the identity of a particular corner, or rather trees, monuments, called for in the muniment of title, determinable by courses and distances, the character of the ground and marks on trees. One of the lines of which the corner was the terminus was 3380 poles long and the other 1650 poles. Tested by the courses and distances, the trees accord very well with the call of the patent, except in one respect. To make them do so, it was necessary to change the course of one of the lines from southwest to northwest, on the assumption of a mistake in the patent call, indicated by attempts to locate it. The opinion was not as to the location of a line dependent upon general evidence in the case, nor of the location of a boundary of land. The test as to the admissibility of non-expert opinion evidence, as declared by this Court, is whether the nature of the subject matter of the opinion is such as to make it reasonably convenient or practicable for the witness to state to the jury all the facts and circumstances within his own knowledge and upon which the opinion is founded. *Walker* v. *Strosnider,* 67 W. Va. 39, 71; *Kunst* v. *Grafton,* 67 W. Va. 20. In this instance, the witness had had large experience, in his work, with the lines of the Moore and Beckley, Welsh, and Nicholas patents, all made by the same man within a year of one another, and was familiar with the peculiar marks made to indicate their lines and corners, the evidence found in the marks of the character of the instruments with which they were made and their relation in general to the description thereof in the survey. As the identity of certain trees called for as monuments or their correspondence with calls of the patent was the subject matter of the opinion, it was obviously impossible for the witness to detail to the jury all the facts, circumstances and peculiarities upon which his impression was based, and his opinion was admissible under this rule. The admission of the opinion of a witness as to the loca-

tion of a line was held erroneous in *Mylius* v. *Lumber Co.,* 69
W. Va. 346, 368, but the location of a line dependent upon gen-
eral evidence, differs materially from the identity of a monu-
ment.  *Doe* v. *Fields,* 75 Am. Dec. 450; *Insurance Co.* v. *Co-
theal,* 22 Am. Dec. 567, relied upon in the brief, and *Holleran*
v. *Meisel,* 91 Va. 143, are distinguishable upon the same ground.

As the location of the western boundary line of the Moore
and Beckley patent is the principal issue in the case, and instruc-
tions given at the instance of the plaintiff over the objection of
the defendants, gave the jury rules and directions for their guid-
ance in the ascertainment thereof, a statement of this evidence
in a general way is necessary to the determination of the pro-
priety of the action of the court respecting the instructions.  The
northwestern corner of the Moore and Beckley patent, known in
the record as the Calfee corner, is not in dispute.  From this
corner the call of the patent is "thence S. ten degrees W. 3380
poles crossing a number of streams and ridges to a white oak
and chestnut oak also a number of other *blased* trees standing
on a high ridge on the headwaters of Guyandott."  The loca-
tion of this corner is one of the storm centers of the controversy.
From this point, the call of the patent is "from thence N. 85 E.
1650 poles to three chestnuts marked I. S. on the flat top moun-
tain in a Fern Break."  This corner is not in dispute.  On the
long line from the Calfee corner to the southwest corner, straight
as contended for by the plaintiff, to the chestnut oak and other
trees, not on top of the ridge, but 175 feet from the top, on the
slope, there are no marked trees.  From the Calfee corner, to a
point 40 or 50 poles east of this line and slightly more than a
third of the way down, there is a marked corner called the
"eight-notch chestnut."  On a line from the Calfee corner to it,
some marked trees are found corresponding in age with the pat-
ent, and other such trees are found south of that corner on a
continuation of the line from the Calfee corner through it.
This "eight-notch chestnut" was marked as the corner of the
Welch and Nicholas patents, subsequent to the date of the Moore
and Beckley survey, but within a year thereafter.  They de-
scribe it as being in the line of the Moore and Beckley survey,
and call for lines running with the Moore and Beckley survey
to it.  One contention of the defendants is that the western line of
the Moore and Beckley patent begins at the northwest corner

and runs straight to the "eight-notch chestnut" and thence by the same course to intersection with the line from the Flat Top corner, at which point there seems to be nothing to indicate the existence of a corner. Another contention is that said western line must begin at the Calfee corner, run to the "eight-notch chestnut", or to the end of the marked line beyond it, and thence to the southwestern corner as claimed by the plaintiff, so as to make an angular line conforming to the corner and also to the marked trees. This would exclude a portion of the triangle in controversy. The other location would exclude all if it.

Commissioner Snidow, in his division of the Moore and Beckley survey for the purposes of the partition, treated the "eight-notch chestnut" as a marked monument in the western line of the survey, though no monument is called for in the patent at that point, nor anywhere on the line except at the termini. The streams and ridges mentioned in the description of that line are not locative calls. Snidow treated the "eight-notch chestnut" as the corner of Lots 3 and 4 of the survey, as divided by him. Plaintiff claims the land in controversy is a part of Lot No. 4 of the partition, notwithstanding a portion of it lies west of the line run from the "eight-notch chestnut" to the southwest corner as claimed by it. In his report of the division of the survey into lots, Snidow did not call for the "eight-notch chestnut" by name, but did call for other timber found at that point, describing it as follows: "a white oak marked C S and maple marked I S and gum in the fork of a drain." He made this the corner of Lots 3 and 4. Speaking of that corner, he uses the following additional terms: "on a line of said survey and on the south side of a flat corner to lot *no* three and leaving the line of said survey." In describing adjoining Lot No. 3, he designates the corner as follows: "A gum and maple and white oak the white oak marked C. S. and the maple marked I S on the patent line of said survey in the forks of a drain that runs S 10 W and on to the south side of a flat and with the patent line." The Beckley and Stuart deed conveying Lot No. 4 to the heirs of Moore does not describe the corner so minutely, but follows the general description of the survey given in Snidow's report.

In this state of the evidence, the court, at the instance of the plaintiff, told the jury that, if they believed the straight line run-

ning from the Calfee corner to the trees claimed by the plaintiff as the southwest corner, shown on the map used in the trial as the lower and broken line, was the true west line of the Moore and Beckley patent, the call in the deed from Samuel Clark, commissioner, to S. McD. Moore and others, running N. 10 E. 2020 poles, should be taken as running with said lower and broken line to its intersection with a continuation of the line between Lots 3 and 4 of the partition suit of *Stewart* v. *Moore and Beckley*, and that if they believed the trees claimed by the plaintiff as the southwest corner of the Moore and Beckley patent, as shown on the plat used in the trial, was the true southwest corner of the Moore and Beckley patent, and that the Calfee corner was the northwest corner of the patent, the straight line, shown on the map, as the lower and broken line running from the Calfee corner to said trees was the true line.

These two instructions, directing the jury to make the deed from Clark to Moore conform to the location of the western boundary line of the Moore and Beckley tract, as claimed by the plaintiff, in case they should find it to be the true line, notwithstanding the northwest corner of Lot No. 4 conveyed by it was described as being in that line and also at a point some poles to the east thereof, submitted a single question, the location of the line. They left open for jury determination only the ascertainment of the northwest corner and the southwest corner. · If they found these as claimed by the plaintiff, they were directed to establish as the western boundary line, a straight line between the two points and then make the deed from Clark to Moore conform to it.

Conceding this to be the interpretation of the instructions, the argument against their propriety denies the sufficiency of the evidence for submission of an inquiry as to the location of the line elsewhere than along the course shown by the marked trees. The line is not described in the deed as following the direction of certain trees or any trees marked for identification thereof. In other words, the trees relied upon here as conclusively establishing the line to the southwest corner are not mentioned in the patent. Nor does it say the boundary follows a marked line from corner to corner. If it did, it would be impossible to disregard such line, for, as monuments, the trees would be of equal dignity with those marked for the termini of

the line.   But not having been so marked, courts and juries are allowed more latitude in respect to their probative value.   If the patent called for a straight line and a marked line between said points, there would be conflict and a latent ambiguity.   The theory set up in opposition to the action of the court, in giving these instructions, applied here, would adopt a marked line in preference to an unmarked one.   The description of the line involved in the deed would be so altered as to make it a crooked line instead of a straight one.   This result would involve only alteration of courses and distances, it is true, and the proposition thus apparently falls within a well established rule, namely, that marked lines prevail over mere courses and distances.   It does not do so, however, because the statement of that rule in the argument of the case as well as in some opinions, is too broad.   Only marked lines or corners mentioned or called for in the deed or other muniment of title prevail over courses and distances.

In *Smith* v. *Davis,* 4 Grat. 50, the deed called for a straight line between the termini, it being a division line between two parts of a larger tract.   The termini were undisputed, but the division line, as found on the ground, was a curved one, while the deed called for a straight line which was not marked.   The trial court was requested to instruct the jury that, unless they should believe from the evidence the parties had consented to the running of a crooked line and taken possession with reference thereto and had held it for a period of 15 years, they should find the straight line as called for in the deed to be the true division line, provided they further believed the commissioners intended the line to be straight.   The instruction was refused and the appellate court disapproved the ruling, set aside the verdict and remanded the case for a new trial.   In *Marlow* v. *Bell,* 13 Grat. 527, 530, Judge Allen, speaking for the court, said:  "It is not controverted in argument, that where notorious land marks, as corner trees or natural objects, are called for, they are to be regarded as termini, and a straight line is to be run from one terminus to the other, without respect to course or distance.   The case of *Smith* v. *Davis* recognizes this as a general rule.   But though this be the true rule where no other call is found in the grant but the call to run from one terminus to another, there certainly may be other calls which show the line

was not intended to be a straight line; as where a call is to run with a river or a public road from one terminus to another, the stream or road, if it leads to the other terminus, must be followed, though it may diverge from a direct line between the two points. The same rule would apply to a marked line, if there was enough to show that such line, though not a direct line, was intended as the boundary; provided by following the marked line the other terminus can be reached." In the illustration he inserts the essential element of a call for a straight and *marked* line, not merely a straight line. As in the case of a call for a straight line and a *river* or *road,* the deed by its call or otherwise, must show intent to follow a straight and marked line. Then the marked line, if crooked, may control. Creating a latent ambiguity, such conflicting calls lets in extraneous evidence, or to be more accurate, the extraneous evidence, properly and necessarily let in to apply the instrument to its subject matter, discloses the ambiguity, and then, as in other such cases, the question of intention, arising out of the extraneous evidence as well as the document, must be determined. *Armstrong* v. *Ross,* 61 W. Va. 38.

Judge Tucker stated these two propositions as follows in *Dogan* v. *Seekright,* 4 Hen. & M. 125, 131: "If a patent or deed refer to any notorious land-marks, or natural boundaries, which cannot be mistaken, and are not liable to change or decay, as the corners or angles of a plat, such notorious land-marks are to be regarded as termini, from whence straight lines are to be run from one to the other, without regard to the correspondence of either course or distance, which may in such cases be mistaken in the deed. * * * Where courses and distances, with marked lines and corners, are referred to in a deed, in such case lines and corners corresponding most nearly with the courses and distances, lines and corners mentioned in the deed, are to be regarded as the true courses." In that case, the monuments called for in the deed were permitted to control courses and distances. In *Herbert* v. *Wise,* 3 Call. 239, decided in 1802, Judge Pendleton said: "To pursue the proper descriptions of our land boundaries, would render men's titles very precarious, not only from the variations of the compass, but that old surveys were often inaccurate; and mistakes often made, in copying their descriptions into the patents; leaving out lines, and put-

ting north for south, and east for west; and in copying those descriptions into subsequent conveyances: Whereas, the marked trees upon the land remain invariable, according to which neighbors hold their distinct lands. On this ground, our juries have uniformly, and wisely, never suffered such lines, when proved, to be departed from, because they do not agree exactly with descriptions in conveyances." While the case involved a question of boundary, it was one of law and not of fact. The will contained two descriptions, one particular and the other general, one by metes and bounds, and the other by words indicative of intent to dispose of all the residue of a large tract, portions of which had been previously disposed of. The general statement in the opinion must be read in the light of decisions defining it and marking its limitations.

In *Baker* v. *Seekright,* 1 Hen. & M. 177, decided in 1806, a deed described a line by courses and distances only. Parol evidence was offered and admitted showing a marked line, differing somewhat from the line as ascertained by following the courses and distances. As to this line, the deed calling for no monuments, and the marked line, corresponding in age with the date of the deed, was found on the ground not far from where the courses and distances located the line. On a writ of error to the judgment founded upon the marked line, the court held the evidence had been properly admitted. Of these two cases, Judge Roane said in *Dogan* v. *Seekright,* they "shew the sense of the Court in favour of marked and reputed boundaries, when in opposition to mistaken descriptions in deeds or surveys, or to mere courses and distances." Speaking of *Baker* v. *Seekright,* he said: "In that case, parol evidence was admitted to establish a marked line, which did not correspond with that mentioned in the deed either as to course or distance. It was so admitted, on the ground that the description in the deed may have been mistaken; whereas the marked and reputed line, being more stable and permanent, ought to prevail, or at last, be submitted without prejudice to the consideration of the Jury." In his analysis of the evidence in *Dogan* v. *Seekright,* Judge Tucker shows one of the lines contended for was not indicated by any monuments found upon the ground, while the other was indicated by monuments answering reasonably well the description thereof in the patent. It was a case of choice between courses

and distances, on the one hand, and specified monuments on the other. The instruction he framed for the purposes of a new trial made the location a question for the jury, if they should find both of these locations supported by ancient marked lines, run either by the commissioners who divided the land or the parties to whom the lots had been assigned, but not otherwise. By the reference to a subsequent survey, he applied another rule stated by him as follows: "Where, in a grant or deed, courses and distances only are mentioned, beginning from a certain point, but not referring to any certain point for the termination, otherwise than by reference to the distance, according to the courses prescribed; in such case, courses and distances, as expressed in the deed, are only to be regarded, unless an actual survey, duly authorized, be proved to have been subsequently made, according to the courses and distances prescribed by the deed."

Under these principles, marked lines, though not called for in the deed, if shown to have been actually run for the purposes of the deed, prevail over calls for mere courses and distances. But they do not authorize variation of a call for a straight line, between monuments called for and found, by proof of a marked line not called for, so as to make it an angular or crooked line. In that case, a straight line from monument to monument conforms to the description in the deed and is sustained by natural monuments. The deed expresses intent to establish a straight line and the monuments described as termini fix the location with certainty. A marked line found in close proximity to such a line, running from monument to monument, corresponding in age with the date of the survey, may be sufficient proof of an actual survey of that line for the purposes of the conveyance, but, as the deed expressly establishes a straight line, the intent expressed in the instrument logically and justly prevails over a mere inference of a different intent raised by the existence of the inconsistent marked line. The repugnancy is attributed to mistake in the marking of the line, not in draft of the deed, for its expressed intent must control. When both the straight line and the marked line are called for, and the latter is crooked, conflicting intent is expressed in the deed. Then courts and juries are at liberty to say which shall prevail.

This proposition is asserted by the decision in *Smith* v. *Davis,*

cited, and the opinion of Judge Tucker in *Dogan* v. *Seekright,* and later in *Pasley* v. *English,* 5 Grat. 141, 152. In that case, Judge Baldwin said: "But there are no cases decided by this Court to countenance the idea, that a claimant of the legal title to land under deed or conveyance, can disregard the calls of his deed, and rely merely upon parol evidence, that at or about the time of his purchase, a division line was run by and between him and his vendor, without any evidence to prove that the marks are found upon the ground and correspond reasonably with the date of the deed, survey or division, or that they were once so found, and have been lost by decay or destruction." In a former portion of his opinion, he said: "Some of the American cases have held, in conformity with what a rigid adherence to principle would seem to require, that the monuments which are to control *course* and *distance* must be called for in the instrument: but others assert that where a deed describes the land by *courses* and *distances* only, and old marks are found on the ground corresponding in age, as nearly as can be ascertained, with the date of the deed, and so nearly agreeing with courses and distances, that they may well be supposed to have been made for its boundaries, the marks shall be taken as the termini of the land. * * * The Virginia cases seem to have gone still further, and to have given much weight to marked lines of such a description, found on the ground, though corner trees, *not to be found or ascertained by evidence, are called for in the instrument,* or though inconsistent with points in a plat referred to, especially if comporting with natural objects mentioned." This he states as the limit of relaxation of the strict rule. To warrant the establishment of a marked line differing from the calls of a deed, the calls must be for course and distance only, or the corner monuments called for must be unascertainable from the evidence or not found. If they are found, and inconsistent marked lines are sought to be established, the monuments are controlling, and such inconsistent line not called for must be rejected. These observations harmonize perfectly with those of Judge Tucker in the earlier case of *Dogan* v. *Seekright* and the later cases of *Smith* v. *Davis* and *Marlow* v. *Bell.* The principle is re-asserted and applied in the comparatively recent case of *Jackson* v. *Land Ass'n,* 51 W. Va. 482, holding: "A line should not be deflected except in order

to conform to the intention of the parties. And, if possible, a line should be construed to mean a continuous line." See also *Tompkins* v. *Vintroux,* 3 W. Va. 148, in which a call for a line to be so located as to convey a certain quantity of land, but described as a straight line, was held insusceptible of change from a straight, to an angular or crooked, one, so as to include the quantity intended to be conveyed.

The statute requiring surveyors of public lands to be patented by the commonwealth to bound the same by marked lines, where a watercourse or an established marked line shall not be the boundary, is relied upon as denying the application of this rule in the ascertainment of the lines of the patent, but the observations of Judge Baldwin in *Pasley* v. *English* excludes this contention. Having mentioned the statute as the cause for relaxation of the strict rule, he says: "It thus being made part of the surveyor's duty to mark the lines, if such marked lines are found on the ground, his omission to notice them in his report, or noticing their termini inaccurately, may be placed on the same footing with other omissions or inaccuracies of description in regard to courses, distances, &c. introduced into the patent from the certificate of survey. And this relaxation in regard to patents would naturally extend to deeds consequent upon, or growing out of them, as is the case with all our conveyances." Properly construed, this statute was necessarily directory and not mandatory, in the sense that an erroneous but certain description of the patent would be so broadened by extraneous evidence as to include all the land surveyed for it or so narrowed as to exclude a portion of it. The statute contains no such provision, and, in the wilderness in which those early surveys were made, it was practically impossible to avoid mistakes. Some of the difficulties incident to running long lines and rendering mistakes inevitable are pointed out in the opinion in *State* v. *King,* 64 W. Va. 546, 579.

In giving these instructions the court treated the evidence as to the identity of the southwest corner as inconclusive and raising a question for jury determination. It also treated the evidence of the existence of a marked line from the southwest corner to the "eight-notch chestnut" as being inconsistent with the evidence offered by the plaintiff to establish the southwest corner, and tending to prove the claim of the defendants as to the

location of the western line, inconsistent with plaintiff's claim as to the location of that corner. Under them, the jury were at liberty to establish the southwest corner by the evidence relied upon by the plaintiff as to its location, or upon the evidence of the inconsistent marked line, to reject that location and treat the corner as unascertainable except by the course indicated by the marked line and the distance call. The propriety of this ruling by the court is a proper and logical conclusion deducible from the authorities here analyzed.

Plaintiff's instruction No. 1 bound the jury to make the deed from Clark, Commissioner, to Moore, conform to the line from the Calfee corner to the southwest corner as located by the plaintiff, and so withdrew that question from the jury as one of law for court determination. The Clark deed calls for that line as well as for the "eight-notch chestnut." It was made in execution of the decree of partition, plainly intended by the court for division and conveyance of the entire Moore and Beckley tract, as disclosed by the facts and circumstances and the purposes of the parties as well as the deeds made in execution of the decree. This being true, the call for the trees some distance east of the western boundary line must necessarily have been a mistake. It is plainly contradictory of the general purpose and intent of the conveyance. A grantor in a deed, apparently intended for conveyance of all of his land or all of a tract, is presumed not to have intended to retain a narrow strip thereof, and, upon this presumption, calls in the deed may be disregarded as being erroneous. *Clayton* v. *County Court,* 58 W. Va. 253; *Adams* v. *Alkire,* 20 W. Va. 480. If a deed contains two descriptions, one general and the other particular, the general description will prevail, if shown by the terms of the deed, its purpose, the situation of the parties and the circumstances, to accord better with the intent of the parties than the particular description. *Herbert* v. *Wise,* 3 Call. 239; *Mylius* v. *Lumber Co.,* 69 W. Va. 346, 351. Of the intention of the parties to the partition suit and of Clark, Commissioner, to make conveyances of the entire Moore and Beckley survey, there can be no doubt. This being true, the calls for trees west of the line as the corner of Lots 3 and 4 is just as clearly a mistaken call. Under such circumstances, the court may treat the question of intent as one of law and need not

submit it to the jury: *Mylius* v. *Lumber Co.,* cited; *Snooks* v. *Wingfield,* 52 W. Va. 441. The call is for the line of the patent as well as the trees, establishing a case of ambiguity in the terms of the instrument, permitting inquiry as to the intention. In *Matheny* v. *Allen,* 63 W. Va. 443, the call was for a tree near a corner not for the tree and the corner, or at the corner. The phrase "with Preston's line" was uncertain. It may have meant parallel with the line or by the course of the line.

An instruction submitted to the jury whether the parties claimed titles from a common source, Riffe, Ford and McCreery, whether either plaintiff or defendants had had actual possession of the land in controversy or any part thereof, whether plaintiff and its grantors were prior to defendants in the acquisition of its title and had paid all taxes on such lands from the date of such acquisition, and authorized a verdict for the plaintiff, even though it had not traced title to the state nor had actual possession of the land for ten years, if all the inquiries should be answered affirmatively. The submission of an inquiry as to a common source of title is one ground of objection to it. The paper title of the defendants, as has been shown, runs back to Bartley D. Cole, whose title came mediately from Riffe, Ford and McCreery. Its call for the Bray line, running diagonally across the strip between the two alleged locations of the western line of the Moore and Beckley survey, limited it to about one-half of the section of that strip, corresponding with its length, but excluded none of the surface or mineral recovered by the plaintiff. Cole's deed to Farley, instead of conveying the triangle thus formed by the deed under which he held, called for the northwest corner of the Moore and Beckley patent as being 32 poles farther west, on the division line between Lots 3 and 4 continued, and when Farley conveyed to Campbell, he started at the same point. This point is in the western line of the Moore and Beckley survey, as located by the plaintiff, and the paper title of the defendants traces back to it. If it is the true line, a question submitted to the jury, these deeds call for land within that survey, in terms recognized by them. Thus connected, their paper title goes on back to the state by the same course as that of the plaintiff. The defendants were not bound to rest their defense on this title alone. Declining to show any at all, they could put the plaintiff on

proof of its own title, or use their deeds as mere color of title or as evidence of good title under the Moore and Beckley patent, just as readily and effectually as the plaintiff could rely upon that title, or show superior outstanding title in a stranger. All the title papers being in evidence, it was competent for the jury to determine the relation thereof and the true status of the titles and claims. Hence no error in the submission of the inquiry as to sources of title is perceived. The effect of proof of a common source of title is not necessary to establish good title in the plaintiff, his being prior in time. It works an estoppel against the defendants and so dispenses with necessity of proof of perfect title in the plaintiff. *Summerfield* v. *White*, 54 W. Va. 311, 321. The rule is a recognized exception to the general rule, requiring the plaintiff to trace his title to the state. *Witten* v. *St. Clair*, 27 W. Va. 762; 10 A. & E. Ency. L. 491; Newell on Eject. 579; Herm. Est., sec. 593. These conclusions overrule the exception to plaintiff's instruction No. 6 also.

Plaintiff's instruction No. 5, submitting an inquiry as to whether the possession relied upon by the defendants was within Farley's reservation under his deed to Campbell and excluding the statute of limitations, in the event of an affirmative answer, was properly given, since the evidence as to whether such possession was within the reservation, or beyond it and on the land claimed by Campbell and Curtis, was conflicting.

The evidence relating to the location of the western line of the Moore and Beckley survey, hereinbefore set out in substance, sustains the finding as to it. Most of the argument against its sufficiency is founded upon the untenable views as to the law already disposed of. The propriety of the alteration of the bearing of the 1650 pole line, as being a mistaken description thereof, was a question for the jury, as in other similar and like cases. The practical agreement of that line, so run with the variation allowed with the marked trees, claimed as the corner, and of the line from those trees to the Calfee corner and its calls for course and distance, was proper evidence for the jury on that question. It is admissible and forceful under the recognized rule, authorizing the closing of surveys, one of the tests of the identity of lines and corners.

On the locations of the exceptions from the Moore deed, the testimony of a witness was adduced. Reciting his knowledge

thereof in a general way, he declares positively that the land in controversy is outside of all of them.   He said he had examined all the deeds for land in Lots 3 and 4 of the Moore and Beckley survey, had been at the houses of many of the owners and on the land and knew nobody other than the defendants claimed the land in controversy.   This, in our opinion, makes a sufficient *prima facie* case of location outside of the exceptions, under the rule, and nothing was adduced in rebuttal.   If rebuttal evidence had been adduced, it would have been necessary to show and establish the lines, but, in the absence thereof, we do not think the rule requires such exact and definite proof of location.

The verdict does not extend beyond the western line of the survey as found by the jury; and it excepts all of the surface, conveyed to Farley by Cole, beyond the lines of Farley's conveyance to Meadows, acquired by the plaintiff.   In this respect, the verdict accords with the disclaimer and the proof as accepted by the jury.

The judgment is without error and will be affirmed.

*Affirmed.*