# CHARLESTON.

JAMES M. BOGGS *v.* W. F. MORRISON *et al.*

(No. 5730)

Submitted September 22, 1926.   Decided September 28, 1926.

1. BOUNDARIES—*Location of Beginning Corner Near Mouth of Run Cannot be Established as Conclusion of Law Because Deed Described it as Water Birch on Bank of River and Line as Running Thence up Such Run With Line of Another; Phrase "Up a Run" Does Not Necessarily Mean Following Meanders of Water Course, Especially Where Another Expression Militates Against it.*

   Where, in ejectment, there is a sharp controversy over the location on the ground of a beginning corner of a dividing line (the correct location of which line is the issue in the case), the location thereof at a point near the mouth of a run cannot be established as a conclusion of law because the deed describes the beginning corner as a water birch on the bank of a river and running thence up a run with the line of another to another corner. The phrase "up a run" does not necessarily mean following the water course literally with the meanders thereof; and especially where there is another expression in the deed which militates against it.   (p. 244.)

   (Boundaries, 9 C. J. §§ 7, 348.)

2. SAME—*Where Location of Beginning Corner was Disputed and Description Thereof in Deed Was Ambiguous, Instruction That Plaintiff Had Burden of Proving Dividing Line Claimed by Him by Preponderance of Evidence, and, if He Failed to Find for Defendant, Was Not Error.*

   In such case it is not error to instruct the jury that the burden is on the plaintiff to prove by the preponderance of the evidence the location of the dividing line as claimed by him, and if he fails to carry that burden they should find for defendant.   (p. 247.)

   (Boundaries, 9 C. J. § 296.)

3. EJECTMENT—*If Trial Results in Hung Jury, and on Second Trial, Without Objections, Same Pleadings Are Used, Error in Permitting Disclaimer to be Filed Without Withdrawing Plea of Not Guilty Not Objected to, is Not Ground for Setting Aside Verdict for Defendant.*

   If in the trial of ejectment and after a plea of not guilty has been interposed, defendant tenders and is permitted to

file and have spread upon the record a disclaimer of part of the land sued for, without objection or exception upon the part of plaintiff, and the parties proceed to trial upon the issues thus made, resulting in a hung jury; and later the case goes to trial before another jury, without objection, upon the pleadings so made up, resulting in a verdict for defendant, the error in permitting the disclaimer to be filed without first withdrawing the plea, tacitly agreed to by plaintiff, is not good ground for setting aside the verdict.   (p. 249.)

(Ejectment, 19 C. J. § 325.)

4. SAME—

A disclaimer which disclaims all title to and possession of land lying beyond a line designated with certainty on the trial map and giving the courses, distances and termini thereof, is sufficiently definite.   (p. 250.)

(Ejectment, 19 C. J. § 130.)

5. BOUNDARIES—*Where Issue Was on Location of Dividing Line and Verdict Was for Defendant Who Had Filed Disclaimer of All Lands Beyond Line on Official Map Used at Trial, Judgment May be Entered Fixing Line Laid Down in Map As True Division Line.*

And where in ejectment the issue depends upon the location of a division line and the verdict is for the defendant, and there is a disclaimer by him of all the lands described in the declaration beyond a line designated and fixed on the official map used as such in the trial, it is sufficient on which judgment may be entered fixing the line so laid down on the map as the true division line. (*Tolley* v. *Pease*, 72 W. Va. 321.)   (p. 250.)

(Boundaries, 9 C. J. § 355.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Braxton County.

Ejectment by James M. Boggs against W. F. Morrison and others. To review a judgment setting aside a verdict for defendants they bring error.

*Judgment reversed; verdict reinstated; judgment entered here.*

*Brown, Jackson & Knight* and *Lon H. Kelly,* for plaintiffs in error.

*Haymond & Fox,* for defendant in error.

LIVELY, JUDGE:

Morrison and others, defendants below, here plaintiffs in error, and hereinafter called "Morrison" or "defendants", prosecute error to the action of the circuit court in setting aside a verdict in their favor in an action of ejectment instituted by defendant in error, James M. Boggs, hereinafter called "Boggs" or "plaintiff". The location of a division line is the basis of the controversy. The trial map will make the controversy clearer.

ELK RIVER

RACCOON CREEK

Calls to lines up Shop Run

Beginning at ratter Birch
at mouth Shop Run at D

S 77 E 13½ Po
S 80 E 10 Po
S 63 E 8 "
S 45 E 4 "
S 37 E 5 "
S 26½ E 10 "
S 14 E 22 "
S 47¼ E 15½
S 27½ E 14½
S 23 W 7 "
S 3½ E 2 " Passing it

larg Walnut stump 2 Po West
of said line.
S 16 W 8 Po
S 2 W 7 "
S 16 E 10 "
S 29¼ E 36 " to Cob Rock's
S 28½ W 12 " thence Sugar at

on top of ridge. Thence
S 37 W 32 Po to sugar at
sugar

S 30 W 126 Po

Boggs Mill

Sugar and Beech
Gone.
S 11 E 16 Po

Sugar and Beech
gone.

Beech
not found

Water Birch at mouth of Shop Run
Gone.

W.F. Morrison. 113¹⁰⁰ Acres

Protracted line

Stone

Stone

J.M. Boggs. 152. 55. Acres.

S. 77 W 125 Po

Maple & Beech
not found

Buckeye
and
Gum not found

Wo. v Bo.
standing

Scale 20 Pos to 1 inch.

...th Barr Surveyor
For Braxton County W.Va.

Morrison asserted that the true location of the division line is from a water birch on the bank of Elk River, thence in a straight course southeast to a maple on top of the divide between Raccoon Creek and Mill Creek, laid down on the trial map as the line from B to A; while Boggs claims the line as beginning at D on the map, a water birch (now gone) near the confluence of Shop Run and Elk River, thence running with Shop Run to a maple at Cobbs Rocks (on divide between Elk River and Mill Creek), thence to sugar near low gap laid down on the map; or a straight line from the water birch corner at D to the black oak at A. It is not perfectly clear which of these two last mentioned lines Boggs claims as the true line. His original declaration described the line as beginning at a sycamore (D), thence S. 39 E. 189 poles to the large black oak on top of the hill (A), thence N. 30 E. 275 poles &c.; but in an amended declaration the dividing line is described as beginning at a water birch at the mouth of Shop Run (D), thence up said Run with Silas Dean's land line to a maple on the divide between Raccoon Creek and Mill Creek (presumably A), thence S. W. 60 poles to a sugar near a low gap (marked on the map), thence back up to A and thence N. E. 275 poles &c. His counsel says that if the jury had adopted the beginning corner at "D" (and which he claims should have been done as a matter of law), the jury could have found either of the said two last mentioned lines as the true dividing line, under the evidence, which would have been final. So, whether the true beginning point of the dividing line is at "B" on the map or at "D", about 29 rods below and down the river from "B", is vital. Plaintiff says the evidence without contradiction establishes the beginning corner at "D", and the court should treat the same as established as a matter of law. The jury evidently came to the conclusion that "B" was the true beginning corner, for Morrison disclaimed all the land above and north east of the line from "B" to "A" on the map, and pleaded not guilty as to all the land below and southwest of that land. The jury's verdict is simply, "We the jury find for the defendants."

Boggs further says, in addition to his claim just stated, (the overwhelming establishment of the beginning corner at "D" making it the true corner as a matter of law), that the instructions given for Morrison were misleading and erroneous, and the verdict was contrary to the instructions given for the plaintiff.

These were the principal grounds (others will be stated) upon which the motion to set aside the verdict was based, and the court set aside the verdict presumably upon one or both of these grounds. It is urged by Boggs that the trial court committed no error in setting aside the verdict on the grounds stated.

The title to the land in controversy comes from a common source. It is a part of a 200-acre tract owned by James A. Boggs, who in 1848 conveyed it to John J. Dean. Becoming involved financially, John J. Dean conveyed the 200 acres to Holt, trustee, to secure payment of a debt owing to James A. Boggs. Prior to execution of the deed of trust he entered into some verbal arrangement with his two sons George and Silas C. whereby he agreed to give them the land if they would pay or help pay the indebtedness. These sons divided the land by parole agreement, and the dividing line made by them is the dividing line now in controversy. Where did it begin, how did it run through the 200-acre tract, and where did it end? Later, in 1857, Holt, trustee, sold the land under the trust deed and it was purchased by James A. Boggs, and the title reinvested in him. In 1865, James A. Boggs deeded a portion of the 200-acre tract to his brother Francis C. Boggs. Morrison and the other defendants are successors in title to Francis C. Boggs. Later, in 1889, James A. Boggs' land was sold in a creditor's suit and plaintiff, J. M. Boggs, became the purchaser, the deed to him describing the land as "containing 100 acres being a residue of a tract of land of 200 acres after abating one-half thereof conveyed by Jas. A. Boggs to F. C. Boggs, said 100 acres being part of the 200 acres conveyed by H. A. Holt, trustee." The deed from James A. Boggs to Francis C. Boggs in 1865, under which Morrison's title is derived, describes the land conveyed as "Beginning at a water

birch on the bank of said river (Elk) and running thence up a run with a line of Silas C. Dean's land to a maple on top of the divide between Raccoon Creek and Mill Creek, corner to George Dean's land, & running thence to a sugar tree near a low gap, George Friend's corner, thence with the lines of Friend to Peter Reips land & thence with said Reips lines to James Smiths land & thence with said Smiths lines to Enoch Cunningham's land & thence with said Cunningham's line to said river & thence up said river with the meanders thereof to the beginning, containing 200 acres more or less.'' It will be observed that the description of the boundaries after the sugar tree near a low gap is reached is unimportant, for there the original 200-acre James A. Boggs tract is left and other land, foreign to this controversy, is included. But it is to be noted that when the line reaches Elk River, it runs with the *meanders thereof,* and not with the general direction or by straight line; whereas, the description of the line from the beginning corner (water birch) to the maple on top of the divide, corner to George Dean, is *"up a run* with a line of Silas C. Dean's land''. So, it will be readily perceived that the respective rights of the parties are to be determined upon a location of this line described in the deed of 1865, from Jas. A. Boggs to Francis C. Boggs. Plaintiff's deed is to the *residue* of the 200-acre tract, after abating therefrom the land deeded in 1865 to Francis E. Boggs. His land goes to the line of Morrison and there stops.

Upon the major proposition of counsel for Boggs that the evidence uncontroverted establishes the beginning of the division line at ''D'' on the map, and therefore that corner was established *as a conclusion of law,* we cannot agree. While many of plaintiff's witnesses say that there was a large sycamore there with a water birch standing many years ago and that the birch was marked, they are of different opinions as to how the line ran from that point, whether it was a straight line to the black oak at ''A'' on the map, or to Cobbs Rocks (not marked on the map) which is on the divide between Elk River and Mill Creek. On the other hand, from the preponderance of the evidence from other title papers executed

while John J. Dean owned the land, and from the evidence of old people, it appears that the maple and black oak corner on the divide between the two creeks, a corner of George Dean's land marked ''A'' on the map, is the terminus of the dividing line in question. From that corner (''A'' on the map) many witnesses have traced a well marked old line a straight course down the hill to the run, thence down the run and across a small bluff to the water birch on the river at ''B'' on the map. That water birch was marked as a corner. There was evidence that timber on each side of this line had been cut and removed by the respective owners. It appears there were no timber markings between the water birch at ''B'' (the land there was partially cleared) until the bluff had been passed and the run reached where a large buckeye was marked, and from there was a clearly marked line in a straight course to the corner at ''A''. It is not clearly shown that the straight line from ''D'' to ''A'' protracted on the map was marked; nor is it clear that the line from ''D'' up the run following its meanders in eleven courses, and arbitrarily laid down by the surveyor, passing Cobbs Rocks (not on the map) to ''sugar near low gap'', was definitely marked on the timber on the ground. It is difficult to say just which of these lines plaintiff claims as the outside of his boundary. Moreover, the jury was taken upon the land and had peculiar knowledge thereby to interpret and weigh the other evidence before it. We think the establishment of the beginning corner was purely a jury question, and there is ample evidence on which they could find that the water birch at ''B'' on the map (near the end of a dam across Elk River, now gone) was one true beginning corner. But it is argued that the deed fixes the line from the beginning birch corner as running thence ''up a run'' with a line of Silas C. Dean, and therefore the run must be followed in its course, wherefore the birch at ''B'' could not be the beginning corner, for a bluff lies between that corner and the ''run'', and the beginning corner must be at ''D'' near the mouth of the ''run'', as claimed by plaintiff. That does not necessarily follow. The beginning corner is not described as being at or near the mouth of a run. It is described as being

on the bank of Elk River, and it would have been natural to add "near the mouth of a run." had that been the fact. Because it says thence up a run with a line of Silas C. Dean's land to a maple on top of the divide does not conclusively say it must follow the run from beginning to end. If that were the meaning, the maple on the top of the divide could not be reached, for the run does not extend that far; the run divides and neither branch goes to the maple corner. That corner appears to be approached by a ridge or hill running up to it from the water course, with marked timber standing on it as well as along the watercourse, all the timber indicating a straight line, which, extended, reaches the birch corner marked "B" on the map. The phrase "thence up a run" does not necessarily fix the line along the watercourse with the meanders. The scrivener of that deed was careful to say in the description of the closing line that it ran up Elk River with the *meanders* thereof; but used no such careful limitation on the line "up the run". We think the phrase "thence up a run with a line" (one line with a line of Silas Dean's land) can reasonably be construed to mean the same general direction with the run. *Matheny* v. *Allen,* 63 W. Va. 443. It is not so clear, definite and precise that we can say as a conclusion of law that the beginning corner is in fact fixed on the river bank near the mouth of a run. The location of that corner was a jury question and not a question of law.

Instructions given for defendants are claimed to be erroneous in that they tell the jury that plaintiff in order to recover must prove to the satisfaction of the jury the location of the line in controversy, and upon failure to do so they should find for defendants. Instruction No. 7 is said to contain the vice in that respect found in others, and it is as follows:

"And the jury are further instructed that the burden is on the plaintiff to prove the line he claims is correct and if after having heard all of the evidence the jury should believe therefrom that there is so much uncertainty as to the location of the division line between the plaintiffs land and the land of the defendants that they are unable to form any fixed opinion as to where said line is located and unable from said evidence

to say where said division line is, then in such case the jury should find for the defendants.''

That this instruction correctly propounds a correct proposition of law is not seriously controverted. The alleged error in giving it is that it is not applicable to this particular case. The instruction is to the effect that plaintiff must establish by a preponderance of evidence and to the satisfaction of the jury the boundaries of the land claimed by him, his exterior lines, before he can recover under his declaration. The burden is on plaintiff to establish his case set up in the declaration. Many of our cases approve such instructions. *Coal Co.* v. *Howell*, 36 W. Va. 489; *Fleming Oil & Gas Co.* v. *So. Penn. Oil Co.*, 37 W. Va. 645; *Miller* v. *Holt*, 47 W. Va. 7; *Yonker* v. *Grimm*, 101 W. Va. 711, 133 S. E. 695. But the vice in this instruction, as claimed by plaintiff, is that it was improper and confusing to give that instruction, for the reason that if the jury concluded that the water birch corner was at ''D'', then it was apparent from the declaration and evidence that defendants had in possession unlawfully some of plaintiff's land described in the declaration; for, starting at that point, neither the maple and black oak corner at ''A'', nor the Cobbs Rock corner, nor the ''sugar near low gap'' corner could be reached unless some of plaintiff's land as claimed is included. That proposition is based on the premise that the birch corner is at ''D'' as claimed by plaintiff; and it cannot be assumed that the jury so determined. There might be merit in the contention if we could approve the major premise asserted by plaintiff, namely, that the corner at ''D'' was established as a matter of law.

Another assignment of error in the verdict included in the motion to set it aside, is that it is contrary to the instructions for plaintiff. This error is not mentioned or insisted upon in the brief for Boggs, and we do not perceive in what way the verdict is contrary to plaintiff's instruction. There was no peremptory instruction given on his behalf. His instructions are to the effect that the dividing line must be determined by the calls in the deed from Jas. A. Boggs to Francis C. Boggs, dated in 1865, and if the jury believe the corner at

"D" is the beginning corner in that deed and the line runs from there to Cobbs Rock and from that corner to the sugar tree near low gap, they should find for plaintiff.

Boggs says the action of the trial court in setting aside the verdict is justified, because defendants first pleaded the general issue, and then after the trial began they filed their disclaimer without first withdrawing the plea of not guilty. The case was twice tried before a jury, the first trial resulting in a mistrial. When it was called for trial on Dec. 10, 1923, a plea of not guilty was entered by the clerk and the case proceeded to trial. On the next morning it was discovered that defendants' disclaimer had not been filed when it was tendered to be filed and made a part of the record. There was no objection or exception to the filing of the disclaimer, and the parties proceeded with the trial upon the plea of not guilty supplemented by the disclaimer. That trial resulted in a hung jury. About a year later the case came on again for trial upon the pleadings as made up at the formal trial, without objection on the part of plaintiff, resulting in the verdict now complained of. Defendants should have first withdrawn the statutory plea of not guilty and then filed the disclaimer, again putting in the general plea. They are usually filed simultaneously. The parties tried the case upon the issue raised by the plea and disclaimer and the controversy was confined to the establishment of the dividing line. It may be conceded that there was error, but it was an error which worked no disadvantage to plaintiff in the trial, an error to which he tacitly consented and condoned, of which he could not justly complain after verdict. It is a very sandy and unstable ground on which to base a motion to set aside the verdict. A technical error unchallenged and which works no prejudice to a party in the trial is generally insufficient to avoid a verdict after a full and fair trial. In *Wilson* v. *McCoy,* 93 W. Va. 667, defendants in the progress of the trial were permitted over objection of plaintiffs to file a disclaimer, who thereupon moved for a continuance, which was denied. That case has little application here.

The remaining ground against the validity of the verdict is that the disclaimer is indefinite and defective because it cannot be determined which of the lines laid down on the map, one from "A" to "B", the other from "A" to "C", is claimed by defendants as the true line. The disclaimer says defendants "disclaim title to and possession of all the lands embraced within the calls set out in plaintiff's declaration, as shown by the trial map northeast of line A-B as follows: Beginning at a water birch on the bank of Elk River at or near point on trial map designated by letter B, and running thence 29-3/4 E. 203 poles to a black oak on the divide between Coon Creek (Raccoon) and Mill Creek, George Dean's corner, at or near point designated on trial map by letter A (laid down on trial map as N. 28-1/2 W. 195 poles), thence N. 30 E. 275 poles &c." (designating calls of plaintiff's land to place of beginning). This disclaimer fixes the line as running from "A" to "B", specifically designating it as that laid down on the map as N. 28-1/2 W. 195 poles. It says this line so laid down on the map is actually 203 poles in distance from the water birch to the black oak, and the true degree is 29-3/4 E. from the water birch. Surveyor Barr says the true course of this line is N. 28-1/4 degrees. It is reasonably clear that defendants disclaimed all the land mentioned in the declaration lying northeast of the line from "A" to "B" on the map, and stated thereon to be N. 28-1/2 W. 195.

The verdict, as stated, was a general one for defendants. Is it sufficiently definite on which judgment may be entered, settling the controversy in finality? We held in *Tolley* v. *Pease,* 72 W. Va. 321, which involved the establishment of a division line, and where there was a disclaimer of title and possession to all land beyond a certain line designated on the official map of the lands in controversy, a general verdict for defendant was sufficiently definite for the court to enter judgment establishing the line so designated as the true line. That case controls here. The disclaimer, which is recorded in the Law Order Book of the court, specifically refers to the line from "A" to "B" on the trial map. In *Wilson* v. *Mc-*

*Coy*, 93 W. Va. 667, the disclaimer made no reference to any map; and the distinction between the cases is pointed out therein by Judge MILLER.

The reasons set up for sustaining the action of the court in setting aside the verdict are not sufficient to sustain that action; and the judgment of the trial court in so doing will be reversed and judgment for the defendants entered here.

*Judgment reversed; verdict reinstated;*

*judgment entered here.*