# CHARLESTON.

UNITED FUEL GAS COMPANY v. L. T. TOWNSEND *et als.*

(No. 5922)

Submitted October 4, 1927. Decided October 11, 1927.

1. BOUNDARIES—*Where Description in Conveyance Substantially Corresponds With That in Title Papers, There is Rebuttable Presumption Against Grantor's Retention of Strip Near One of His Lines.*

   Where the description in a conveyance of land corresponds substantially with the description in the title papers under which the land is held, it will be presumed, subject to explanation, that the grantor does not intend to retain a long, narrow strip next to one of his lines. (p. 282.)

   (Boundaries, 9 C. J. § 303 [Anno].)

2. MINES AND MINERALS—*Equity May Enjoin Drilling for Oil and Gas, if Plaintiff Has Clear Title and Defendant no Title.*

   Equity has jurisdiction to enjoin drilling for oil and gas, where it appears that the plaintiff has clear title, and the defendant no title, thereto. (p. 283.)

   (Mines and Minerals, 40 C. J. § 506 [Anno].)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Roane County.

Suit by the United Fuel Gas Company against L. T. Townsend and others for an injunction and to cancel a lease and a deed. From a decree for plaintiff, defendants appeal.

*Affirmed.*

*Thos. P. Ryan* and *Harper & Baker,* for appellants.

*Raymond Dodson, Bernard J. Pettigrew* and *Harold A. Ritz,* for appellee.

HATCHER, PRESIDENT:

Prior to 1897 H. R. Carper had acquired several contiguous tracts of land in Roane County. The most westerly of these tracts was one of 99¾ acres. Its description is as follows: * * * "commencing at a cucumber on the North side of Little Left Hand on the line of G. W. Pettit N 6 E 32 poles to a poplar, and walnut thence S 84 E 22 poles to a walnut thence N 26 E 110 poles to a white oak & Hickory, thence down the hill with the line of A. Gallatine, crossing the branch to a sugar, thence *a south W and P. M. McCan's line* to a Hickory near the top of the ridge on G. W. Pettits line thence with Pettits line on Easterly course to place of beginning." Attention is directed to the fact that the southwest line of the above tract runs with G. W. Pettitt.

In 1897 H. R. Carper conveyed a tract of 54½ acres to W. G. Carper. That tract embraces the westernly part of the 99¾ acres, and is described as follows: "Beginning at a cucumber and chestnut pointers. N 6 E 27 p to a white lynn, N 28½ E 19 p to a plum bush, N 17½ E 6 p to a stake, N 23 W 4 poles to a stake, N 6 E 38 P to a stake, N

72 E 10 P and 12 links to an ash, N 7 E 19 P & twelve, links to a walnut, N 70--15 E 7 P to a stake, N 4 W 27 P to a stake, S 66½ W 155 P to a hickory, S 55 E 121 P to a cucumber and chestnut pointers the place of beginning." It will be noted that the corner trees of the southwest line of the 54½ acres are identical with those of the southwest line of the 99¾ acre tract, but that the description of the former does not call for the Pettit line. The hickory and cucumber corner trees can not be found. The white lynn and plum bush corners are definitely located. Upon a survey of the 54½ acres, the distances called for fall short of the G. W. Pettit line about 3 rods at the cucumber corner and about 8 rods at the hickory corner. These corners are approximately 140 poles apart. If distance alone be considered, there is a long narrow strip containing about 4½ acres situate next to the Pettit line which is not included in the 54½ acre tract. That strip is the subject of this litigation.

In 1906 W. G. Carper and wife conveyed the surface of the 54½ acre tract to S. B. Pettit (Brooks Pettit), reserving the oil and gas which they later leased to the plaintiff. The description in the deed to Pettit is the same as in the deed to W. G. Carper.

H. R. Carper and wife executed to South Penn Oil Company an oil and gas lease in 1906, on 213 acres more or less, described by reference to adjoining landowners, and as being the same conveyed to him by Nicholas Carper and others. He derived 73¼ acres from Nicholas Carper. His other grantors are not named in the lease. He admitted that the lease contained less than 213 acres. Consequently the references to acreage and to his grantors are of little value. The only tract given as a western boundary is the Brooks Pettit land (i. e. the surface of the 54½ acres). The South Penn Oil Company assigned that lease to the plaintiff.

In 1908 H. R. Carper and wife conveyed to Susan J. Carper a tract of 46 acres described as follows: "Beginning at a stake in the G. W. Pettit line thence in a *northering* direction to a stake at the creek, thence N. 26 E. 110 poles to a white oak and hickory, thence down the hill with the line of A. Gallatan crossing the branch to a sugar thence South W.

with G. R. Pettits line to a stake corner of Brooks Pettit thence with said Brooks Pettit line to the place of beginning.'' It will be observed that the beginning corner of the above tract is on the G. W. Pettit line, and that the closing line of that tract *runs* with Brooks Pettit (the 54½ acres) to the beginning.

In 1919 H. R. Carper and wife quit-claimed unto J. T. Pettit their interest in a tract of land described as containing 9 acres and 28 poles, but which according to the surveyor of defendants is the 4½ acres above referred to.

A producing oil well was completed by plaintiff on the 54½ acre tract in January, 1923. In May of that year J. T. Pettit conveyed unto H. R. Carper and G. R. Pettit an undivided ¾ interest in the oil and gas underlying the 4½ acres. It seems from the evidence that the Pettits and H. R. Carper then gratuitously conferred on W. G. Carper an interest in the oil and gas of that strip.

In 1925 the Pettits and H. R. Carper executed to the defendant L. E. Townsend an oil and gas lease on the 4½ acres. Townsend seems to have imparted interests in that lease to his co-defendants J. P. Young, L. W. Young and E. B. Whited. Townsend and his associates prepared to ·drill a well under their lease but were enjoined therefrom, and their lease as well as the deed from H. R. Carper to J. T. Pettit was cancelled in this suit by the circuit court of Roane County. This appeal involves the propriety of that decree.

It has been held frequently by this Court that there is a presumption of law against a grantor retaining a long narrow strip of 'land next to one of his outside lines, when the description of the land granted approximates the description under which he holds. ''Generally, in the absence of facts or circumstances explanatory, it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines; but if the courses and distances approximate closely to a line or corner of the tract owned by the grantor—especially if the description in the deed corresponds, exactly or substantially, with the description in the title papers under which the land is held—it will be presumed that the lines mentioned are intended to reach the

corners and run with the lines of the tract, though the trees marked and described have disappeared before the making of the deed.'' *Western Co.* v. *Peytona Co.,* 8 W. Va. 406 (418). *Clayton* v. *County Court,* 58 W. Va. 253 (260); *Colliery Co.* v. *Campbell,* 72 W. Va. 449; *Ahner* v. *Young,* 84 W. Va. 336 (343). To meet that presumption, H. R. Carper testifies that he did not sell to the G. W. Pettit line, that he did not intend the 54½ acre tract to extend thereto, and that the survey of the tract made before his conveyance did not include the 4½ acre strip. Whatever weight these declarations may be entitled to is balanced by those of his grantee and co-defendant W. G. Carper, who testifies that he understood his land to extend to the G. W. Pettit line, and knew nothing to the contrary. H. R. Carper discloses no use for which he had designed the strip. He admits that he never put it to any use whatsoever after the deed to W. G. Carper. He also admits that the strip was never integrally assessed on the land books until after the quit-claim deed to J. T. Pettit in 1919. He does not explain the coincidence of the identity of the timber called for on the southwest line of the 54½ acre tract with that called for on the southwest line of his 99¾ acre tract. When asked if he was present during all of the survey of the 54½ acres, he answered, ''I suppose I was most of the time.'' Now where was he present and where absent? How can fact be separated from supposition in the evidence of this witness? The 4½ acre strip adjoins the land contained in his oil and gas lease to South Penn Oil Company; yet he does not include it in his list of adjoiners. His deed to Susan Carper in 1908 declares that the line of the 54½ acre tract runs to the W. G. Pettit line. His spoken word is therefore denied by his written word. We cannot prefer his present reminiscence of a transaction had thirty years ago, to his deliberate written declaration thereof made only eleven years after it occurred. The facts in the case confirm instead of repell the presumption of law that H. R. Carper did not intend to retain the strip in question.

Defendants contend that the primary question involved in this suit is the ownership of the 4½ acre strip, and that as ejectment has not been brought or contemplated, equity has

no jurisdiction, citing with other cases *Lumber Co.* v. *Odell*, 71 W. Va. 206. The citations declare the stable rule that equity will not take jurisdiction merely to settle conflicting titles. The *Odell* case, however, recognizes that a trespasser who "has in fact no title, legal or equitable" may be enjoined at the instance of one in possession. It was alleged and proven in this case that the plaintiff is in possession with good title to the oil and gas on the litigated strip, and that the defendants are clearly without title thereto. Therefore under the *Odell* case equity has jurisdiction. *Electro Co.* v. *Montgomery*, 70 W. Va. 754; *Ephriam Cr. Co.* v. *Bragg*, 75 W. Va. 70; *Myers* v. *Bland*, 77 W. Va. 546.

The decree of the lower court will be affirmed.

*Affirmed.*