# CHARLESTON.

H. B. MAHAN *v.* WILLIAM BLANKENSOP *et al.*

(No. 6625)

Submitted January 21, 1930. Decided February 4, 1930.

*R. L. Ramsey* and *W. S. Wilkin,* for plaintiffs in error.

*Abraham Pinsky* and *Walter E. Mahan,* for defendant in error.

M<small>AXWELL</small>, J<small>UDGE</small>:

This is an action of ejectment wherein there were verdict and judgment for the plaintiff. The defendants prosecute this writ of error.

The land in controversy is a long, narrow strip on the west side of the public highway and adjacent thereto in an outlying section of the city of Wellsburg, Brooke County. The said strip is about three hundred and fifty feet in length, running to a point at each end. The strip is said by the defendants to be about thirty-seven feet in width at its widest point, about the middle thereof. The plaintiff has a life estate in lands lying immediately west of and adjacent to the disputed strip, and he claims that the public highway constitutes his eastern boundary line and therefore that the disputed strip is a part of his land, and that the possession thereof is wrongfully withheld from him by the defendants. Defendants say that the public highway is not the eastern boundary of plaintiff's land but that his eastern boundary is a practically straight line about thirty-seven feet therefrom to the furthest point. Defendants own lots on the eastern side of the highway and claim that their western boundary is not the highway but the above mentioned line on the western side of the highway, about thirty-seven feet therefrom at its furthest distance from it. The land on both sides of the high-

way was at one time owned by H. G. Lazear, and both the plaintiff and defendants trace their title to him. Plaintiff's title is derived under a conveyance made by Lazear and wife to I. C. Bickerstaff September 28, 1875, for about eighteen acres of land on the west side of the road. Defendant's title is traced to a conveyance made by Lazear and wife to Arthur Hughes and John W. Davies March 29, 1884, for a tract of about four acres, directly opposite, on the east side of the road. In the conveyance to Bickerstaff the land is described by metes and bounds, beginning at a stone in the side of the county road, thence with the Sixth Street of the town of Lazearville, as then laid out, to the line of the right of way of the Pittsburgh, Wheeling & Kentucky Railroad Company, then with the said right of way in a direction generally parallel with the county road to a point in the Reeves line; thence in a direction approximately parallel with the first line "to a post in the middle of the county road, thence along the same, south eight and one-half (8½) degrees east, thirty-seven and four-tenths (37-4/10) poles to a post in said road, then south seven (7) degrees east, fifty and five-tenths (50-5/10) poles to the beginning, * * *." The litigation centers about the last line.

It will be noted that although the line running south eight and one-half east, thirty-seven and four-tenths poles to a post runs and terminates in the county road, the last line, namely, the line runing south seven degrees east, fifty and five-tenths poles to the beginning, is not specifically recited as running with the road. The road between the last two points curves to the east. It lies approximately as the arc of a circle. Each end of the last line, as a chord, bisects the arc of the west line of the road, and the segment thus created, bounded on the east by the road (in a curve) and on the west by the said line, constitutes the disputed area. The defendants are in possession of this strip. Blankensop has built a gasoline station on the portion claimed by him.

Between the dates of the two conveyances mentioned, the Bickerstaff land was conveyed to Martha Everett. In the deed from Lazear and wife to Hughes and Davies the western line is not recited as running with the road, but as running from "a post on Martha Everett's line at the county road;

thence with said Everett's line north six and one-half degrees west, twenty and eight-tenths poles to a post and corner of Sophia Cheek's.'' This so-called ''Everett Line'' is the same (except shorter) as the last line in the Bickerstaff conveyance, —the line running south seven degrees east. It is significant, however, that Hughes and Davies considered their western line as running with the public road and not on the western side thereof as claimed by defendants, because they laid off said land into lots, and later, Davies, who had bought out Hughes, recorded their plat of said lots in the office of the clerk of the county court of Brooke County, and that plat shows the road as the western boundary. Another significant thing; In a conveyance by Davies and wife to Lechie Martin for lots 3, 4 and 5, being part of the property now owned by Blankensop and claimed by him to extend across the road, it is recited that they are bounded ''on the west by the county road now Pleasant Avenue.'' Lechie Martin is an immediate grantor of defendant Blankensop.

''It is a general rule that the plaintiff in ejectment must recover, if at all, on the strength of his own title, and must not rely on the weakness of the title of his adversary.'' 4 Ency. Digest of Virginia and West Virginia Courts, page 876, and many cases there cited. Measuring the plaintiff's case by this rule, must he be held to the exactness of the last line in the deed of Lazear to Bickerstaff, with the title to the resultant strip between that line and the road outstanding? Or may it with propriety be said that the jury was warranted in finding for him as to the disputed strip,—in other words, finding that the road is the line? The answer to these questions depends upon the effect that must be given to the concluding language (quoted above) of the description of the land in the said Bickerstaff deed.

We are of opinion that, inasmuch as the said last two lines extend, in their order, from a post in the middle of the road to another post in the road, thence to the beginning stone, which is also in the road, and the first of said lines being fixed definitely in the road, it must be presumed that the last line, too, was intended to be with the road. The use of the phrase ''thence along the same'' (meaning the road) indicates

strongly that the grantors meant for both of the succeeding lines to run with the road. It cannot reasonably be presumed that it was the intention of the parties to said deed that there should be retained by the grantors a long, narrow strip between the land granted and the public highway,—a strip in a swamp which was then (55 years ago) practically valueless to anybody except the grantee. To do such a thing is so out of keeping with common experience that it will be presumed not to have been intended, in the absence of language necessarily importing such intent.

We have many cases holding that the grantor of an entire tract is not presumed to have intended to withhold a narrow strip along an outside line. *State* v. *Mounts et al.*, 108 W. Va. ......, 150 S. E. 513, and cases there cited. "The grantor in a deed, apparently intended for conveyance of all of his land or all of a tract, is presumed not to have intended to retain a narrow strip thereof, and upon this presumption, calls in a deed may be disregarded as being erroneous, if the deed, viewed in the light of extraneous evidence, is ambiguous in its terms." *Winding Gulf Colliery Company* v. *Campbell et al.*, 72 W. Va. 449. Where monuments on one side of a tract of land conveyed by a grantor as part of his whole tract which lies on both sides of a public road, are declared by the deed executed by him to be in such public road, and lines, called for by the deed, extending from monument to monument are partly in the road, and, because of a curve in the road, one of said lines fails to follow the same with exactitude, thus causing a long, narrow outlying strip or segment between the said line and the road, a presumption against intention purposely to create such strip will prevail, the same as though the said line were an outside boundary of the grantor's land, unless overcome by satisfactory proof that the creation of such strip was the intent of the parties. The reason and justification of the rule of the case above referred to are equally applicable to a situation such as the one at bar. We are therefore of opinion that the jury was warranted in finding for the plaintiff and that the court committed no error in entering judgment on the verdict.

*Affirmed.*