H. S. CLONCH *v.* A. W. TABIT

(No. 9050)

Submitted October 22, 1940. Decided December 10, 1940.

*Mahan, Bacon & White* and *S. C. Higgins, Jr.*, for plaintiff in error.

*Eary, Thompson & Vickers*, for defendant in error.

HATCHER, JUDGE:

This is an action in ejectment, brought initially to recover possession of the following described tract:

> "BEGINNING at a poplar in School House Hollow; thence N 12-40 E 711.5 feet to a stake; thence N 59-40 E 338.6 feet to a stake said hollow; thence S 83-20 E 660 feet to a stake in said hollow; thence S 66-05 E 1193 feet crossing Bell Creek near the mouth of School House Branch and crossing the right of way of the Chesapeake & Ohio Railway Company to a stake on the hillside, thence S 5-20 E 105.6 feet to a stake; thence crossing said railway right of way and Bell Creek S 84-40 W 2,211 feet to the place of beginning, and as shown by a map or plat of the same marked 'W. H. Hill estate 20.78 acre tract, Complement to Lot No. 11, by E. B. Roeser Engineer.'"

Defendant pleaded the general issue. At the close of the evidence, plaintiff was permitted, over objection, to

amend the description by substituting in lieu of the first two lines running from the poplar in School House Hollow, the following: *"thence down and with said hollow, N 12-40 E 711.5 feet to a stake; thence N 59-40 E 338.6 feet to a stake in said hollow."* The only changes made by the amendment are the words italicized, referring to the hollow, and they point to the main controversy here. The hollow along these lines is well defined, being "very narrow * * * probably 10 or 12 feet in width." The position of plaintiff is that the thread of the hollow is his boundary line, whether course and distance conform thereto or not. The position of defendant is that plaintiff's boundary is fixed by course and distance, and that lines run according thereto leave, for the greater part, a strip between them and the hollow. A verdict was returned, and judgment entered, for plaintiff.

Plaintiff objects here to a consideration of the bill of exceptions (containing the evidence and exhibits) on the ground that the bill was not signed nor made part of the record within the time permitted by statute. This objection is faced by a *nunc pro tunc* order of the trial court, attempting to bring the matter within the statute, and reciting timely efforts of defendant's counsel and conduct of plaintiff's counsel, unintentional but nevertheless, inducing the delay. It is settled law that a litigant cannot take advantage of his own wrong, even though unintentional. Wherefore, we are of mind not to hear the objection.

The description of the tract in the declaration before its amendment, is practically the same as that in plaintiff's deed. It was made in 1928 by C. E. Mahan, Jr., a special commissioner appointed in a creditors' suit against the estate of W. H. Hill. The bare courses and distances in the deed were taken from the report of a survey made for Mr. Mahan in 1924 by W. W. Coleman, acting under the engineer E. B. Roeser, referred to in the deed. What survey he was directed to make does not specifically appear; but the survey attempted, according to Coleman, was of the calls of a tract denominated "Complement to

the said Lot No. Eleven" (hereafter referred to as "Complement") in a deed made in 1885 by J. H. Morris and wife to Sarah Hill, the mother of W. H. That description follows:

"Beginning at a stake on the East side of Bell Creek near the upper end of the Warren Field, thence West 33.50 chains to a stake on the Nichols line, and with . . . . .down the hollow N 18 deg. E 10.78 chains to buckeye and beech pointers N 65 deg. E 5.13 chains to buckeye pointers, S 78 deg. E 10.00 chains, S 62 deg. E 17.25 chains crossing Bell Creek, to a stake in a group of pawpaws, S 1.60 chains to the beginning, 3 R 27½ P. more or less."

None of the corners in this description was found; but Coleman testified that the Nichols mentioned therein pointed out a poplar as having been considered the corner of the Complement at the end of the first line, where a stake was called for on the Nichols line. Coleman adopted the poplar as the beginning corner of his survey, and ran a line on the reversed course of the first call in the description of Complement. Somewhere along this line he discovered two marked trees which were five degrees and twenty minutes off the course. He returned to the poplar and thence ran out the calls of Complement according to course and distance, with each course corrected five degrees and twenty minutes. According to his calculation, his survey closed "within five and a half feet." He returned a report and plat of his survey to Mr. Mahan. The report is entitled "Description of a Tract of Land surveyed for C. E. Mahan, Jr., said Tract being the complement of Lot No. 11 of the W. H. Hill Estate." In the copy before us, the opening calls of this description are "Beginning at a poplar in School House Hollow, thence down the hollow S (should be N) 12° 40' E 711.5 to a stake, a corner of the Nichols 100-acre tract, and with N. 59° 40' E 338.6 feet to a stake on the right side of the hollow." The plat is entitled "W. H. Hill Estate 20.78 Acre Tract, Complement to Lot No. 11." The plat pur-

ports to show both the lines of the survey and the meanders of the hollow. However, the plat does not conform either to the report of survey or the subsequent Mahan deed to plaintiff, in that it portrays the survey, for the greater part, distinctly away from the drain of the hollow. C. H. Craig, another surveyor, ran the calls for course and distance as incorporated from Coleman's report in plaintiff's deed. He located the corners from those calls only a few feet away from the drain of the hollow.

It appears from testimony that the W. H. Hill heretofore mentioned acquired the Nichols land, referred to both in the description of Complement and in Coleman's report, though his deed for it is not in the record. Defendant secured that land under the Hill title. The lines in his deed follow closely the thread of the hollow. He has recently extended his possession across the hollow in some places, to the lines as platted by Coleman.

Defendant charges that the amendment of the original description in the declaration included more land than was contained in the description, made "a new and different case", and it was error to permit the amendment. The report of Coleman's survey called for running with the hollow. While plaintiff's deed did not so call, the evidence of Craig shows that the bare courses and distances of the deed—the same as in the report—followed the hollow closely. So we regard the amendment simply as clarifying the calls in the original description and not as increasing plaintiff's demand. Defendant does not urge that he was taken by surprise. We are of opinion that in permitting the amendment, the trial court did not abuse the discretion given by Code, 56-4-24.

Defendant's counsel more than once during the trial took the position that Coleman in 1924 "was establishing a new survey", and that plaintiff is bound by the survey as such. Defendant's brief in this Court reiterates that position as follows: "W. W. Coleman made the survey and map for the purpose of securing the description to the tract of land which was to be sold to the

plaintiff. Mahan, Administrator, was directed and authorized to sell this particular tract according to the survey and map made by Coleman. He was not authorized to sell any other tract or to extend the boundaries of the particular tract surveyed by him beyond his survey and beyond the property line shown on the map." The evidence shows beyond controversy that Coleman made the survey for the purpose of locating the lines of Complement, and that instead of regarding his work *as establishing a new survey,* he referred it specifically to Complement both on his report and plat. Plaintiff was not even acquainted with this land until two years after Coleman's survey. Neither is it accurate to say that Mr. Mahan was authorized to sell this particular tract according to Coleman's survey. Coleman is not referred to in the court order, and the description therein varies in several particulars from the description furnished by him. It is true that the court order refers to the tract as being shown on the Roeser (Coleman) plat but identifies it as marked "Complement to Lot No. 11", etc., even as does plaintiff's deed. And the plat does not conform either to Coleman's report of survey, to the description in the court order or to that in the deed.

We are aware of the control given in some decisions, to plats over other descriptions; but that control yields if the plat is obviously erroneous, or when another description best identifies the land in accordance with the intent of the parties. *Mylius* v. *Lbr. Co.,* 69 W. Va. 346, 71 S. E. 404; 11 C. J. S., Boundaries, section 52,d. Here the obvious intention of Coleman was to plat Complement, though to plat it according to his survey of it. Since the plat purports on its face to be a plat of Complement, it is equally obvious that both the court in its order and the commissioner in his deed intended to convey Complement, with one addition hereafter referred to. Complement called for running down the hollow, a natural monument. Coleman's report of his survey of Complement had the same call. Craig ran the calls of plaintiff's deed—calls intended for lines of Complement

—down the hollow. Therefore, in so far as the plat would have the lines in plaintiff's deed not running with the hollow, the plat is obviously erroneous, and must yield to the other descriptions. This holding is supported, if support be needed, by the established presumption of law that a grant of land containing substantially the same description as that in the grantor's title papers, presupposes, subject to explanation, that the grantor did not intend withholding a narrow strip along a boundary line. *United Fuel Gas Co.* v. *Townsend,* 104 W. Va. 279, 282-3, 139 S. E. 856. There is no explanation here to the contrary. And we do not conceive of a reason why in this suit to wind up an estate, the commissioner could have intended to leave a very narrow strip of the estate along a few of plaintiff's lines undisposed of, with no outlet and of no appreciable value by itself. *State* v. *Mounts,* 108 W. Va. 53, 56-7, 150 S. E. 513.

A call in the survey, in part, is "thence S 66-05 E 1193 feet * * * to a stake." In both the order of sale and the deed, the end of this call was changed to "a stake on the hillside." To reach the hillside the distance given, 1193 feet, must be extended 141½ feet. Defendant takes the position that the deed does not include the extension and conferred on plaintiff no title thereto; and that plaintiff has acquired no title otherwise though continuously in possession, because, as defendant asserts, plaintiff's possession was taken by mistake. This assertion is based on plaintiff's statement that he claimed no land outside of his deed. He testified that especially desiring the land in the extension, he paid the commissioner $200.00 more than was asked for the tract, without the extension. It is immaterial what title plaintiff received to the extension through his deed. It included the extension and gave him at least color of title thereto. His possession of the extension was maintained in good faith as a part of his purchase. That possession having continued for more than ten years, has given him title to the extension, so far as this record discloses.

The instructions for plaintiff given, properly presented his theory of which we approve. The instructions for defendant refused, presented his theory of which we disapprove. The verdict is supported by the evidence.

The judgment is affirmed.

*Affirmed.*