332 S.E.2d 604

**POCAHONTAS LAND CORPORATION,
a corporation**

v.

**William D. EVANS and
Douglas E. Evans.**

**No. 16314.**

Supreme Court of Appeals of
West Virginia.

July 3, 1985.

Wade T. Watson, Welch, for appellants.

Ernest P. Hays, II, Lynn C. Johnson and Thomas L. Linkous, Bluefield, for appellee.

McGRAW, Justice:

This is an appeal from a final order of the Circuit Court of McDowell County, entered June 8, 1983, in an action brought by Pocahontas Land Corporation, the appellee herein, to have set aside, as clouds on its title, deeds under which the appellants, William D. Evans and Douglas E. Evans, each claimed an undivided one-third interest in a 5.35-acre portion of the bed of the Dry Fork River located in Sandy River Magisterial District, McDowell County. The controversy arose from an interlock or overlap in the descriptions contained in separate instruments of title under which the respective parties claimed ownership. The circuit court concluded that Pocahontas had valid legal title to the interlock and ordered the appellants' deeds cancelled insofar as they purported to convey any interest in the disputed acreage. We find error in the proceedings below, and we reverse the judgment of the circuit court and remand the case for further proceedings.

The property in dispute in this case overlies the Beckley and Fire Creek seams of coal and was at one time part of a 200-acre tract, referred to herein as the W.K. Evans estate, through which the Dry Fork River passed. W.K. Evans died intestate in 1892 or 1894, survived by his wife, Victoria Evans, and three sons, F.N. Evans, J.N. Evans and F.D. Evans. The heirs held the land jointly until the 1920's, when they joined in a voluntary partition of the 200-acre tract by mutual deeds. That portion of the W.K. Evans estate situate on the western side of Dry Fork River was partitioned first, the eastern portion of the tract remaining unpartitioned until 1930.

As a result of the partition, F.N. Evans and his wife, Gretta M. Evans, parents of appellant Douglas E. Evans, acquired, by deed dated May 1, 1924, a portion of the W.K. Evans estate situate on the western side of Dry Fork River, referred to herein as the F.N. Evans thirty-acre tract. The partition deed described the tract by metes and bounds, beginning at a corner on the western side of the river,

thence leaving said corner (east) *a straight line to the Dry Fork River, thence with said Dry Fork River and the meanders of same (north)* to a point in the line of E.M. Evans near mouth of Rocky Branch, thence west with said line of E.M. and Elizabeth Evans .... (Emphasis added.)

On September 30, 1926, F.N. and Gretta M. Evans executed a deed of trust conveying the tract to John W. Easley, Trustee, to secure payment of a $6,000 note. The description in the deed of trust began at the same corner on the western side of Dry Fork River as that described in the May 1, 1924 partition deed, but continued

thence leaving said corner (east) *a straight line to a stake on the east side of said Dry Fork River,* another corner ... and leaving said corner (north) and *following the eastern side of said Dry Fork River* down same to a point in the line of E.M. Evans near Rock Branch, a tributary of Dry Fork; *thence crossing said Dry Fork* with the line of E.M. and Elizabeth Evans.... (Emphasis added.)

The remainder of the calls are identical to those in the May 1, 1924 partition deed.[1]

The controversy in this case concerns the 5.35-acre strip of the riverbed which lies between the eastern boundary of the F. N. Evans thirty-acre tract described in the May 1, 1924 partition deed and the eastern boundary described in the Easley deed of trust. F.N. and Gretta M. Evans subsequently defaulted on the note secured by the deed of trust, and Easley conveyed the F.N. Evans thirty-acre tract, as described in the deed of trust, to American Finance Company by deed dated October 8, 1928. American Finance Company subsequently conveyed the property to Samantha Payne as part of a 136.9-acre tract of land situate on the western side of Dry Fork River. This deed, dated August 1, 1942, made reference to the Easley deed of trust, but described the 136.9-acre tract as being bounded to the east by the west bank of Dry Fork River and did not purport to convey any part of the riverbed. By deed dated July 1, 1972, Charles W. French, surviving member of the Board of Directors of American Finance Company[2] quitclaimed to Samantha Payne all interest and title it had acquired in the riverbed adjoining the 136.9-acre tract.

By deed dated July 25, 1972, Samantha Payne conveyed to Pocahontas Land Corporation the coal underlying her 136.9-acre tract, along with so much of the surface as Pocahontas deemed necessary to conduct mining operations. The deed described the property as including the entire riverbed up to the eastern bank of the river which was described as easternmost boundary of the Payne conveyance. This boundary was recognized in another deed dated the same day, whereby Gretta M. Evans conveyed to Pocahontas a similar interest in a contiguous tract of land encompassing a portion of the W.K. Evans estate situate entirely on the eastern side of Dry Fork River.

On February 23, 1977, Pocahontas instituted an action in the Circuit Court of McDowell County to have set aside as a cloud on its title a deed dated July 11, 1972, whereby Gretta M. Evans purported to convey to William D. Evans, son of Douglas E. Evans, an eight-acre parcel of the bed of the Dry Fork River.[3] The complaint alleged that the description contained in this deed interlocked with or overlapped 5.35 acres of the riverbed to which Pocahontas claimed title by virtue of the conveyance from Samantha Payne.

By order entered July 18, 1977, the circuit court referred the matter to a commissioner for the purpose of ascertaining whether an interlock or overlap did in fact exist and, if so, which party owned the valid and superior legal title thereto. Evidentiary hearings were conducted on December 12, 1977 and May 10, 1978.

At the hearings, there was no real dispute between the parties on the question of

---

1. The Easley deed of trust also makes reference to a prior deed, describing the property as
    the same property which was conveyed unto [F.N. and Gretta Evans] by Victoria Evans and others by deed dated the 10th day of April, 1924, and of record in the office of the Clerk of the County Court of said McDowell County in Deed Book No. — at page —.
   The parties to this action agree that there is no deed dated April 10, 1924 which relates to the F.N. Evans thirty-acre tract.

2. American Finance Company was dissolved and its corporate charter surrendered to the State of West Virginia by Certificate of Dissolution dated June 22, 1943.

3. This deed purported to convey fee simple title to the riverbed parcel to William D. Evans, the only party defendant named in the complaint. During the proceedings below, the parties admitted that, at most, the deed conveyed an undivided one-third interest in the parcel. The defense then introduced into evidence the deed whereby Douglas E. Evans claimed another undivided one-third interest in the same eight-acre parcel. On October 24, 1978, following the entry of the commissioner's report, the original complaint was amended to include Douglas E. Evans as a party, and judgment was entered against both of the appellants.

whether an interlock did in fact exist, the principle issue being the ownership of the riverbed acreage. The parties introduced a number of deeds relating to the partition of the W.K. Evans estate, none of which embraced the 5.35-acre portion of the riverbed. Pocahontas contended that the coparceners had intended the riverbed acreage to be partitioned along with the F.N. Evans thirty-acre tract and claimed title to the interlock as successor in title to F.N. and Gretta M. Evans under the Easley deed of trust. In addition, Pocahontas contended that the interlock acreage had been forfeited to the State by American Finance Company for non-entry on the land books and introduced evidence to show that it had redeemed the property by payment of delinquent taxes thereon from the years 1943 to 1973.

The appellants, on the other hand, contended that the coparceners never intended the interlock acreage to be included as part of the F.N. Evans thirty-acre tract, as evidenced by a deed dated October 14, 1927, whereby F.N. and Gretta M. Evans conveyed to J.A. Waggoner, Gretta's father, all their interest in the as-yet unpartitioned portion of the W.K. Evans estate situate on the eastern side of the river. The deed described the western boundary of the unpartitioned estate as "running the Western side of the [Dry Fork River] with the line of F.N. Evans, thirty acre tract." The appellants contended that after the partition of the W.K. Evans estate on the eastern side of Dry Fork River, the cotenants retained their undivided interests in the riverbed, and claimed title to the interlock as successors in title to those cotenants.[4]

In addition to reviewing the numerous exhibits introduced by the parties, the commissioner, after the close of the hearings, conducted a personal examination of the property records in the office of the County Clerk of McDowell County, and discovered several instruments of title which had not been offered into evidence by either party. Among these instruments were a partition deed dated November 15, 1923, and a subsequent deed of trust, executed to T.F. Henritze, trustee, dated June 1, 1927, which purportedly related to a parcel of the W.K. Evans estate, referred to herein as the Victoria Evans thirty-acre tract. These instruments allegedly describe the Victoria Evans thirty-acre tract as being situate on the western side of Dry Fork River to the south of the F.N. Evans thirty-acre tract and as sharing a common boundary "with the line of F.N. and Gretta M. Evans" across the river to the eastern bank. It is further alleged that the deed of trust was not released of record and the property was conveyed by deed dated January 30, 1929, to American Finance Company which subsequently conveyed the tract to Samantha Payne. The August 1, 1942 deed from American Finance Company makes reference to the Henritze deed of trust.

On October 11, 1978, the commissioner submitted to the circuit court his findings and conclusions. Based on the evidence presented by the parties and upon his own review of the records in the county clerk's office, the commissioner concluded that that Pocahontas owned the valid and legal title to the interlock acreage. The commissioner recommended that the deeds relied upon by the appellants be set aside and cancelled insofar as they purported to convey any interest in the disputed acreage.

The appellants filed their exceptions to the commissioner's findings and conclusions with the circuit court on November 17, 1978. Pocahontas responded, and both parties submitted memoranda in support of their positions. On November 6, 1980 the circuit court entered a memorandum order confirming the findings and conclusions of

---

**4.** Appellant William D. Evans claims title to the one-third interest in the riverbed acreage allegedly acquired by J.A. Waggoner from F.N. and Gretta M. Evans under the deed of October 14, 1927. J.A. Waggoner died intestate in 1947, survived solely by his daughter, Gretta M. Evans, who conveyed this interest to William D. Evans by deed dated July 11, 1972.

Appellant Douglas E. Evans claimed a separate one-third interest by virtue of a conveyance dated May 17, 1977, from Lelia B. Rader, successor in title to F.D. Evans. It was asserted that the remaining one-third interest in the disputed acreage is vested in the heirs or assigns of J.N. Evans.

the commissioner and setting aside the appellants' deeds.

The court found from the evidence introduced by the parties and the documents discovered by the commissioner, that in partitioning the W.K. Evans estate, the heirs intended the F.N. Evans thirty-acre tract to border on the eastern side of the Dry Fork River as described in the Easley deed of trust and thus include the interlock acreage. The court found that Pocahontas had acquired title to the interlock area by virtue of the conveyances to American Finance Company by deed of October 1928 and to Samantha Payne by the July 1, 1972 quitclaim deed. The circuit court further found that Pocahontas had perfected its title by redeeming the riverbed acreage from forfeiture to the State upon payment of the delinquent taxes.[5]

Upon these findings of fact and conclusions of law, the circuit court confirmed the commissioner's report and ordered the appellants' deeds set aside insofar as they purported to convey any interest therein. The appellants' motions to alter or amend the court's findings and judgment were denied by order entered June 8, 1983, and the appellants appealed.

The appellants' first assignment of error is that the circuit court erred in considering the numerous instruments of title, particularly the various deeds effecting the partition of the W.K. Evans estate, in determining the intent of the heirs with respect to the eastern boundary of the F.N. Evans thirty-acre tract. The appellants assert that the May 1, 1924 partition deed speaks for itself and is controlling on the issue of what land F.N. and Gretta M. Evans acquired thereby and could convey to Easley.

■ The fundamental principle in interpreting deeds is that the intention of the parties, if ascertainable prevails, and, as a general rule, it is necessary to consider the entire instrument as a whole in order to ascertain that intent. *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961); *Well-*

*man v. Tomblin,* 140 W.Va. 342, 84 S.E.2d 617 (1954); *Swope v. Pageton Pocahontas Coal Co.,* 129 W.Va. 813, 41 S.E.2d 691 (1947). Where the intent of the parties is clearly expressed in definite and unambiguous language on the face of the deed itself, the court is required to give effect to such language and, ordinarily, will not resort to parole or extrinsic evidence. *McDonough Co. v. E.I. DuPont DeNemours & Co., Inc.,* 167 W.Va. 611, 280 S.E.2d 246 (1981); *West Virginia Department of Highways v. Farmer,* 159 W.Va. 823, 226 S.E.2d 717 (1976); *Davis v. Hardman,* 148 W.Va. 82, 133 S.E.2d 77 (1963); *Stephenson v. Kuntz,* 131 W.Va. 599, 49 S.E.2d 235 (1948); *Bruen v. Thaxton,* 126 W.Va. 330, 28 S.E.2d 59 (1943).

■ When, however, a partition of land is made by mutual deeds, the partition is to be viewed as a single transaction, and all of the deeds effecting such partition are to be read and construed together as a single instrument in the light of the circumstances attendant to their execution. *Baucum v. LeBaron,* 136 Cal.App.2d 593, 289 P.2d 266 (1955); *Beck v. Gulf Production Co.,* 113 S.W.2d 258 (Tex.Civ.App.1938); *State v. Mounts,* 108 W.Va. 53, 150 S.E. 513 (1929). *See also Cities Service Oil Co. v. Dunlap,* 100 F.2d 294 (5th Cir.1938); *Lang v. Fornea,* 135 So.2d 643 (La.App. 1981). The intent of the parties, as expressed by all their terms, governs. *See generally* 68 C.J.S. *Partition* § 9(b) (1950).

■ In viewing all the partition deeds as a single instrument, it is evident that the interlock acreage was not embraced in any of them. The May 1, 1924 partition deed specified that the eastern boundary of the F.N. Evans thirty-acre tract was to run "with the meanders" of Dry Fork River. Under the doctrine of *ad medium filum aquae,* a boundary so described is ordinarily presumed to run the center or thread of the river. *Conner v. Jarrett,* 120 W.Va. 633, 200 S.E. 39 (1939); *State v. Mounts, supra.* Those deeds effecting the partition

---

**5.** The circuit court also concluded that even if the coparceners had not intended to include the interlock acreage in the partition of the Evans thirty-acre tract, Pocahontas had acquired title

to it under the doctrine of estoppel by deed. In view of our resolution of the case, we need not discuss this alternative holding of the circuit court.

of the W.K. Evans estate to the east of the F.N. Evans thirty-acre tract described the western boundaries of the subdivided parcels as running "with the East Bank" or "with the east side" of the river.[6] Such a description is generally held to exclude the stream itself and to designate the edge of the water as the outer boundary. *See Boggs v. Morrison,* 102 W.Va. 240, 135 S.E. 230 (1926); *Carter v. Chesapeake & Ohio Ry Co.,* 26 W.Va. 644 (1885). *See generally,* 12 Am.Jur.2d *Boundaries* § 26 (1964). The riverbed to the north of the F.N. Evans thirty-acre tract was included in its entirety in a twenty-five acre tract acquired by F.D. Evans and Gertrude Evans, his wife, by deed dated May 20, 1930 effecting the partition of the eastern lands of the W.K. Evans estate. The deed described the southern boundary of this tract as extending across the river to the western bank. The riverbed to the south of the disputed acreage was allegedly included in its entirety in the description of the thirty-acre tract allotted to Victoria Evans under the partition deed of November 15, 1923, which purportedly described a common boundary with the F.N. Evans thirty-acre tract extending across the river to the eastern bank.

■ Thus, the net effect of the partition deeds was to leave an isolated strip of riverbed unpartitioned. It well-established that the grantor of an entire tract is presumed not to intend to withhold a narrow strip or gore along an outside line. *Clonch v. Tabit,* 122 W.Va. 674, 12 S.E.2d 521 (1940); *Mahan v. Blankensop,* 108 W.Va. 520, 151 S.E. 847 (1930); *United Fuel Gas Co. v. Townsend,* 104 W.Va. 279, 139 S.E. 856 (1927); *Ahner v. Young,* 84 W.Va. 336, 99 S.E. 552 (1919); *Winding Gulf Colliery Co. v. Campbell,* 72 W.Va. 449, 78 S.E. 384 (1913); *Clayton v. Gilmer County Court,* 58 W.Va. 253, 52 S.E. 103 (1905). Similarly, when there is a voluntary partition of land it will be presumed, in the absence of a clear intention to the contrary, that the parties intended to divide all of the property into adjoining parcels and have not left small parts and isolated portions unpartitioned. *Doyle v. Stanolind Oil & Gas Co.,* 123 F.2d 900 (5th Cir.1942); *Cities Service Oil Co. v. Dunlop, supra; Pendery v. Panhandle Refining Co.,* 169 S.W.2d 766 (Tex.Cir.App.1943). *See also State v. Mounts, supra. See generally* 68 C.J.S. *Partition* § 18 (1950).

■ When the evidence is viewed in this light, we cannot say that the circuit court erred in concluding that the parties to the partition intended to designate the eastern bank of the river as the outer boundary of the F.N. Evans thirty-acre tract and, thus, include the entire riverbed as part of that parcel. None of the partition deeds contain any reservation or exception of any part of the bed of the river passing through the W.K. Evans estate. The coparceners subdivided the riverbed running through the estate to the north and south of the disputed acreage so that it passed in its entirety with one or the other of the adjoining parcels, thus evincing an intent to partition the center section of the riverbed in the same manner. The fact that the November 15, 1923 partition deed discovered by the commissioner purportedly describes the Victoria Evans thirty-acre tract as sharing a common boundary with the F.N. Evans thirty-acre tract extending across the river to the eastern bank is strong evidence that the coparceners intended the disputed acreage to be partitioned as part of the latter tract.

■ The appellants assert, however, that the circuit court erred in considering the November 15, 1923 partition deed and the Henritze deed of trust since they were never introduced into evidence by the parties. Without reaching the issue of whether the commissioner's search of the records was proper in the circumstances, we think that the circuit court and the commissioner committed error in not affording the appellants an opportunity to challenge the instruments allegedly discovered as a result of such search. Indeed, as these instruments were never made a part of the record, they cannot be considered on appeal. *See Cottle*

---

6. Gretta M. Evans acquired title to these eastern parcels as successor in title to her former husband, F.N. Evans, and to her father, J.A. Wagoner. It was her interest in these tracts which she conveyed to Pocahontas by deed dated July 25, 1972.

**310**

*v. Cottle*, 129 W.Va. 324, 40 S.E.2d 863 (1946); *Nolan v. Guardian Coal & Oil Co.*, 119 W.Va. 545, 194 S.E. 347 (1937).

Accordingly, we reverse the judgment of the Circuit Court of McDowell County on this ground. However, since Pocahontas has made a *prima facie* showing that the November 15, 1923 deed is relevant as a partition deed and that the Henritze deed of trust is relevant by virtue of it having been incorporated by reference in the August 1, 1942 deed from American Finance Corporation to Samantha Payne, we are of the opinion that the case should be remanded for further development of the record. *See Arbogast v. Randolph County, C.S.C.*, 172 W.Va. 609, 309 S.E.2d 108 (1983).

We emphasize that on remand the circuit court's inquiry is limited to the existence and content of the instruments relied upon but not entered into evidence of record. However, absent some forceful evidence to rebut the existence of these instruments or their effect, the circuit court's judgment should be affirmed.

In view of our disposition of the case we deem it unnecessary to reach the other issues raised in this appeal. Accordingly, the judgment of the Circuit Court of McDowell County is reversed, and the case is remanded for further proceedings in accordance with the principles enunciated herein.

Reversed and remanded.